EMMA F. M. AYRES, Respondent, *v.* THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Appellant.

1. APPEAL — PRESUMPTION OF SUFFICIENCY OF EVIDENCE RESULTING FROM UNANIMOUS AFFIRMANCE. When it appears from the record that the affirmance by the Appellate Division of a judgment entered on a verdict not directed by the court was unanimous, the Court of Appeals is compelled by the Constitution (Art. 6, § 9) and the statute (Code Civ. Pro. § 191) to presume that there was sufficient evidence to sustain the facts found by the jury.

2. NEGLIGENCE — DEGREE OF CARE REQUIRED OF PASSENGER ON STATION PLATFORM. A passenger walking on a railroad station platform, in order to enter his train, is not bound to exercise any more care than the law requires in a place presumed to be safe.

3. PASSENGER WALKING ON PLATFORM NOT REQUIRED TO LOOK DIRECTLY DOWN. A passenger walking on a station platform to enter his train is not bound, as matter of law, to look down on the platform while walking a given distance thereon, although the jury can so find as a matter of fact where the passenger was injured by stumbling over a mail bag thrown upon the platform from the incoming train.

4. PERSONAL INJURY — DAMAGES FOR FUTURE RESULTS. In an action for negligence, any physical disability or derangement, directly caused by the accident, is a proper element of damage. As there can be but one recovery, it may include damages not only for what has actually been suffered from the disabling effect of the injury down to the time of the trial, but also for such pain or inconvenience as is reasonably certain in the future; and the prospective disablement may be inferred from the nature of the injury, or proved by the opinions of experts.

5. GROUND FOR FUTURE DAMAGES IN REFERENCE TO INJURY. Where the evidence in an action for negligence resulting in an injury to the plaintiff's knee is to the effect that, although more than three years had elapsed since the accident, the plaintiff still limped and could not swing the injured leg naturally, or as far back as the other, without pain, the defendant is not entitled to have the jury charged that there is no ground upon which they can find any future damages in reference to the injury to the knee.

6. OPINION OF MEDICAL EXPERT AS TO CONTINUANCE OF INJURY. The statement by a physician who had treated the plaintiff that, in his opinion as a physician, he is able, with reasonable certainty, to form an opinion as to the length of time that the condition described by him as existing in the plaintiff will continue, qualifies him to state what will be the continuance of that condition in the ordinary and natural course of nature.

*Ayres* v. *D., L. & W. R. R. Co.*, 4 App. Div. 511, affirmed.

(Argued January 19, 1899; decided February 28, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 24, 1896, unanimously affirming a judgment in favor of the plaintiff entered upon the verdict of a jury.

This action was brought to recover damages for personal injuries alleged to have been sustained through the negligence of defendant.

The facts, so far as material, are stated in the opinion.

*William Kernan* for appellant. Defendant was not liable for the act of the postal clerk in this case, and the court should have so held when requested. (*Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 494; *Muster* v. *C., M. & St. P. R. R. Co.*, 61 Wis. 325; *Putnam* v. *B. & S. A. R. R. Co.,* 55 N. Y. 108; *Palmer* v. *Penna. Co.,* 111 N. Y. 488; *Morris* v. *N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 678.) The court erred in

refusing to charge that, upon the evidence there was no ground upon which the jury could find any future damages on account of the injury to the knee. (*Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305.) The court erred in the admission of evidence. (*Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305.)

*William Townsend* and *A. E. Carroll* for respondent. The plaintiff being a passenger of the defendant was entitled to a reasonably safe passage from defendant's waiting room to its cars, and had the right to regard the platform provided for the use of passengers as a safe and proper place, and the defendant was bound to exercise toward her such care and diligence as could be reasonably exercised to protect her from such injuries as human foresight could anticipate and prevent, and the defendant is liable to the plaintiff for injuries received because of failure on its part to perform the duties aforesaid, the plaintiff being free from contributory negligence. (*Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 493; *Snow* v. *F. R. R. Co.*, 136 Mass. 552; *Archer* v. *N. Y., N. H. & H. R. R. Co.*, 106 N. Y. 589; *Hurlbert* v. *N. Y. C. R. R. Co.*, 40 N. Y. 145; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 605; *Boyce* v. *M. R. Co.*, 118 N. Y. 314; *Pennison* v. *C., St. L. & N. O. R. R. Co.*, 44 Am. Rep. 444; *Patten* v. *C. & N. R. R. Co.*, 32 Wis. 528; *McDonald* v. *C. & N. W. R. R. Co.*, 26 Iowa, 124.) On the evidence the question of defendant's negligence was properly submitted to the jury. (*Boyce* v. *M. R. Co.*, 118 N. Y. 318.) Plaintiff was free from contributory negligence. (*Boyce* v. *M. R. Co.*, 118 N. Y. 314; *Chisholm* v. *State of N. Y.*, 141 N. Y. 246; *Lent* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 467; *Weed* v. *Vil. of Ballston Spa*, 76 N. Y. 329.) The damages allowed by the jury were not excessive and were reasonable, and the verdict, affirmed by the Appellate Division, should be conclusive. (*Minick* v. *City of Troy*, 19 Hun, 253; 83 N. Y. 514; *Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 43 Hun, 421; *Groves* v. *City of Rochester*, 39 Hun, 5; *Stouter* v. *M. R.*

*Co.*, 25 N. Y. S. R. 683.)  Defendant's exceptions are untenable.  (*Boyce* v. *M. R. Co.*, 118 N. Y. 318; *Kane* v. *N. Y. C. & H. R. R. R. Co.*, 132 N. Y. 160; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264.)

VANN, J.  On the 23rd of October, 1891, the plaintiff, a physician residing at Saratoga, was called professionally to Brookfield in the county of Madison.  The next day, on her way home, she went to North Brookfield for the purpose of taking a train on the defendant's railroad.  She entered the depot by the rear door, bought her ticket, and after waiting nearly an hour for the train, which was late, went out on the platform through the front door in order to enter a car.  By this time it was dark and the lamps, by which the platform was usually lighted, were not burning, but a little light came through the windows of the depot and the passenger coach. The plaintiff was not familiar with the locality, having never been there until this occasion, except as she had passed through a day or two before.  As she went from the depot out upon the platform the train was still moving north, and she walked south, with the other passengers, to take the passenger coach. The platform was in good order and without obstructions, but, before the train stopped, the postal clerk in charge of the mail car threw a mail bag out, as he had long been in the habit of doing, and it fell across the route of the plaintiff.  As she walked along at her usual gait, looking straight ahead, with several people in front of her going in the same direction, she did not see the bag, but stumbled over it in the dark, fell and was injured.  She had looked up as she passed along at the windows of the first car she met, and seeing that it was a smoking car went on, and she had walked between thirty and forty feet on the platform when she met with the accident.  The action has been tried three times, and the last trial, which is now before us for review, was held in May, 1895, about three and one-half years after she was injured.

As it appears from the record that the affirmance by the Appellate Division was unanimous, we are compelled by the

Constitution and the statute to presume that there was sufficient evidence to sustain the facts found by the jury. (Const. art. 6, § 9; Code Civ. Pro. § 191.) The exceptions taken to the rulings relating to evidence and to the charge are, however, open to review, and we will briefly consider the most important of those that have been called to our attention.

At the close of the charge the defendant asked the trial judge to instruct the jury "that, while the plaintiff may not have been bound to keep her eyes down all the time that she was going as far as the mail bag, that she was bound to use reasonable care, and, at least, look upon the platform at some time during the journey." The court refused to charge in those words, but charged "that the plaintiff was bound to use reasonable care in going from the station room to the car, and that if she did not she cannot recover." The defendant excepted to the modification and to the refusal. In the body of his charge the learned trial judge had said to the jury that, "no matter how negligent the defendant may have been, if the plaintiff was also negligent in such manner that her negligence contributed to the injury, she cannot recover;" that the "plaintiff was called upon in going upon that platform to use such care and prudence as a person of reasonable care and prudence would use under like circumstances. Now, what should she do? Perhaps you will have no difficulty in concluding that in going to that car she was not compelled to look at her feet all the time, but she was entitled to go to her car precisely as any other person of ordinary care and prudence would go. If there is something which she did which she ought not to have done, if there is anything which from the evidence you think justifies the conclusion that she was going along carelessly, or that she ought to have looked at this time, ought to have seen that this mail bag was there, then, of course, she is guilty of contributory negligence. Contributory negligence is a question of fact for the jury, and I leave that question to you. If you should find that she was guilty of contributory negligence notwithstanding you should find that the defendant was guilty of negligence, she cannot recover."

The plaintiff had testified on her cross-examination that she did not bend her head down, but looked just as all do when they are walking; that she was walking as she always did, and was not looking down on the platform, but looking straight ahead in the direction of the car that she was seeking in order to get upon it.

The plaintiff had purchased a ticket and was in the act of taking passage on the defendant's train. She was, therefore, a passenger, and it was the duty of the defendant to provide a safe platform for her to walk upon in order to enter a coach and not to expose her to any unnecessary danger, or to one of which it was aware. (*Carpenter* v. *Boston & Albany R. R. Co.*, 97 N. Y. 494.) She had the right to presume that the platform was a safe place, because it was provided by the defendant for passengers to walk upon as they were invited to enter its cars. Hence instructions that would be proper for a place of known danger, such as a railroad crossing at grade, would not be appropriate to a place which the passenger had a right to presume was safe. While a railroad company may insist upon the specific instruction to the jury that a traveler crossing its railroad at grade is bound to look and listen, and, if necessary, stop until the train has passed, this is because of the well-known danger of walking or driving in front of a moving train which cannot stop and which has the right to proceed without stopping. The platform of a railroad station, however, is not a place of known danger, but is presumed to be a place of safety. In this respect it is not unlike an ordinary sidewalk in a public street, which the wayfarer has the right to assume is in a safe condition until in some manner warned of danger. (*Moebus* v. *Herrmann*, 108 N. Y. 349, 354; *Jennings* v. *Van Schaick*, 108 N. Y. 530; *McGuire* v. *Spence*, 91 N. Y. 303; *Weed* v. *Village of Ballston Spa*, 76 N. Y. 329, 333.)

In *McGuire* v. *Spence* the court said : " He who approaches a railroad crossing approaches a place of danger, and he must look and listen, for he is bound to anticipate a possible harm. But 'ne who passes along a sidewalk has a right to presume it

to be safe.   He is not called upon to anticipate danger, and is not negligent for not being on his guard."   While the plaintiff was bound to exercise care, she was not bound to exercise any more care than the law requires in a place presumed to be safe.   Hence we cannot say as matter of law that she was bound to look down on the platform while walking a given distance thereon, although the jury could so find as a matter of fact.   After charging that she was bound to use reasonable care, and that if she did or omitted anything that a person of reasonable care and prudence would not have done or omitted under like circumstances, the trial judge was not bound to say in the language of counsel that she was obliged " to look upon the platform at some time during the journey."   If she was bound to look once in a short distance, how many times may we be called upon to say, as matter of law, that a person would be bound to look in a long distance ?   Where are we to stop ?   Moreover, the plaintiff testified that she looked straight ahead just as all people do when they are walking, but did not look down on the platform.   This does not necessarily imply that she did not see the platform at all.   The jury had the right to find that she had the view in front of her under command, and that as she advanced her vision continually covered the platform a little way in front of her, and, hence, gradually the whole as she walked along.   When a person looks straight ahead it is a warrantable inference that he sees the walk before him, and while he does not see the part directly at his feet just as he is about to pass over it, it does not follow that he did not see it when a little more remote from it.

In *Boyce* v. *Manhattan Ry. Co.* (118 N. Y. 314, 319) it was held that a passenger alighting from a coach on an elevated railroad " was under no obligation, as a matter of law, to look before she put her foot down, but it was a question of fact for the jury to decide not only whether she should have been more vigilant, but also whether if she had looked she could have seen the hole in the surrounding darkness."   We think the exception under consideration was not well taken.

The defendant asked the court to charge " that upon the

evidence there is no ground upon which the jury can find any future damages in reference to the injury to the knee." The trial judge said: "I will not charge that as a matter of law. They will take all the evidence. She, I think, stated that the knee was still troublesome. At least the jury will remember the evidence, if any, upon that subject. If the evidence satisfies the jury that there is no longer any difficulty with the leg, then of course she cannot recover anything in reference to future damages. I do not remember definitely and would not want to charge as matter of law about it." The defendant excepted, and thereupon asked the court to charge the jury " that they had no right to guess or speculate in reference to any future damages, but they must be reasonably certain upon the evidence in their own minds," and the court charged accordingly. There was no request to charge that the jury could not find any permanent damages with reference to the knee, but simply that they could not find any future damages.

The evidence tended to show that the plaintiff fell heavily upon her knee, causing an abrasion and inflammation. It swelled until on the tenth day after the accident it was twice its natural size and the knee cap floated owing to the effusion of water around the joint. There was more or less pain for a long period. The leg was put in a plaster cast, which she wore seven or eight weeks, remaining in bed all the time. After removing the plaster cast the leg was stiff and a brace was worn for three or four months, so constructed as to keep the joint apart and avoid friction in walking. After that a different kind of brace, made of leather and iron and reaching from the hip to the bottom of the foot, was worn for awhile. This was followed by a third, consisting of an iron band covered with leather around the waist, with two perineal straps passing between the limbs and a long iron brace from the side to the foot. This enabled her to walk without any weight on the knee joint. At the time of the last trial the knee was very much improved, although not entirely well. She testified that her knee improved with the extension brace, " and does improve ; I wear an elastic brace all the time now ;

I cannot bend it (meaning the knee) as I can the other * * *; I do not experience any pain from the knee now, not unless I attempt to bend it back as far as I can the other, and I find I cannot do that; what little I do walk the pain does not seem to be in the knee joint; I do not think I have had any noticeable pain for the last six months; every one tells me I limp. I may have got used to it; I wear about it to support it a silk brace; it looks very much like a silk stocking, only made of heavy rubber and silk; it comes from the calf of the limb half way to the hip joint; I have always worn one since I left off the other brace, never have gone without it; I left off the long brace and put this on two years in June, and I have worn this brace since."

Her physician testified that "the knee is as nearly normal as a physician can get it, I mean natural. Q. Is it so that it is actually normal or is it not quite perfect? A. That is impossible for me to say because I can only state what I saw; so far as my observation goes, the knee is normal and should be at this time." One witness, a lady who had frequently seen the plaintiff up to within a short time of the trial, stated that "she always limped." Another stated that she had seen the plaintiff limp when walking, and that in going up the steps to get to the house she would put up one foot, then place the other on the same step and come up sideways; that when she came down she would take hold of the railing and come down sideways. The plaintiff's mother, who had her under almost constant observation, testified that she walked better and stronger, "but that limb don't swing like the other one; she has had a long rubber stocking for support; * * * she has not used a cane for six months that I know of; * * * she has walked a great deal better and stronger since 1893."

This evidence warranted the jury in finding that the plaintiff's knee was not entirely well, and that she would certainly suffer some inconvenience from it in the future, because, although more than three years had elapsed since the accident, she still limped and could not swing her injured leg naturally, or as far back as the other, without pain.

Any physical disability or derangement, directly caused by the accident, is a proper element of damage. As there can be but one recovery, it may include damages not only for what has actually been suffered from the disabling effect of the injury down to the time of the trial, but also for such pain or inconvenience as is reasonably certain in the future. The prospective disablement may be inferred from the nature of the injury, or proved by the opinions of experts. (*Curtis* v. *Rochester & Syracuse R. R. Co.*, 18 N. Y. 534; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 42; *Kane* v. *N. Y., N. H. & H. R. R. Co.*, 132 N. Y. 160; Shearman & Redfield on Negligence, § 597; Sutherland on Damages, § 86; Field on Damages, § 668; Hale on Damages, 78.)

In the *Curtis* case the court said : " In estimating the pecuniary loss in such cases, all the consequences of the injury, future as well as past, are to be taken into consideration."

And in the *Filer* case, " successive actions cannot be brought by the plaintiff for the recovery of damages, as they may accrue from time to time, resulting from the injury complained of, as would be the case for a continuous wrong or a continued trespass. The action is for a single wrong, the injury resulting from a single act, and the plaintiff was entitled to recover not only the damages which had been actually sustained up to the time of the trial, but also compensation for future damages ; that is, compensation for all the damages resulting from the injury, whether present or prospective. The limit in respect to future damages is that they must be such as it is reasonably certain will inevitably and necessarily result from the injury."

In *Kane* v. *N. Y., N. H. & H. R. R. Co.* (132 N. Y. 160) the plaintiff had sustained an injury to his hip in a railroad accident, and evidence was given tending to show that while he was sound before the accident, at the time of the trial his hip troubled him in damp weather, and he could not walk as well as he used to. The court charged that he was entitled " to recover for the injuries that he has sustained, and that the jury can look to the future as well as to the past, because the

plaintiff can maintain no other action." The charge was sustained as correct, and it was held that he was entitled to recover for the pain that he would endure in the future.

In *Strohm* v. *N. Y., L. E. & W. R. R. Co.* (96 N. Y. 305), relied upon by the appellant, while it was held that an expert could not state that certain symptoms might develop into something worse, because it was too speculative, still, the court said that " future consequences which are reasonably to be expected to follow an injury, may be given in evidence for the purpose of enhancing the damages to be awarded. But to entitle such apprehended consequences to be considered by the jury, they must be such as in the ordinary course of nature are reasonably certain to ensue. Consequences which are contingent, speculative, or merely possible, are not proper to be considered in ascertaining the damages. It is not enough that the injuries received may develop into more serious conditions than those which are visible at the time of the injury, nor even that they are likely to so develop. To entitle a plaintiff to recover present damages, for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury."

In the case before us it did not need the testimony of experts to show that the plaintiff would suffer more or less inconvenience in the future owing to the condition of her knee, as it was not yet well and some time would be required to effect a complete recovery. While the future inconvenience might be slight, and of short duration, the defendant was not entitled to have it altogether withdrawn from the consideration of the jury, or to the instruction that " there is no ground upon which the jury can find any future damages in reference to the injury to the knee."

The condition of the plaintiff's spine, as a result of the accident, was the subject of sharp controversy upon the trial. A physician who had treated her for several months, after describing the condition of her spine from actual observation, was asked, " In your opinion as a physician are you able with

reasonable certainty to form an opinion as to the length of time that the condition of the spine, which you have described here upon the stand as existing in the plaintiff, will continue?" After answering in the affirmative, he was next asked, "What will be the continuance of the condition of the spine in the ordinary and natural course of nature?" The witness answered "that this condition will continue; that without treatment it will probably increase and will trouble her more or less as long as she lives; under the most favorable circumstances, after awhile it might decrease to a certain extent and remain there; with perfect rest mentally and physically and proper treatment that after a time it would cease to be troublesome at all possibly."

Each of these questions was separately objected to as incompetent, but the court overruled the objection and the defendant excepted. The answer to the second question was not objected to as not responsive, and no motion was made to strike it out on that ground. The answer to the first question qualified the witness to state with "reasonable certainty" his opinion, called for by the second, as to the continuance of the condition of the spine "in the ordinary and natural course of nature." This was substantially the language used in the *Strohm* case, and the questions objected to were competent under that and the later cases. (*Turner* v. *City of Newburgh*, 109 N. Y. 301, 309; *Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 115 N. Y. 61, 63.)

After considering all the other exceptions properly before us, we find none calling for a reversal of the judgment, which should, therefore, be affirmed.

All concur, except GRAY and HAIGHT, JJ., dissenting.

Judgment affirmed.