LEWIS E. CARPENTER, Respondent, *v.* JOHN TAYLOR, Appellant.

1. EVIDENCE — PAROL EVIDENCE TO SUSTAIN AGREEMENT FOR EXTRA COMPENSATION TO ASSIGNEE FOR CREDITORS. Parol proof tending to show that the extra compensation to an assignee for creditors, stipulated for in a writing executed by the assignor after the assignment, was reasonable or proper, is wholly inadmissible in determining whether the agreement to pay the extra compensation is valid in its general scope and purpose, since the law impressed upon the paper, as soon as it was made and delivered, a legal character which followed it for all time without regard to the opinion which the assignee or his witnesses had with respect to its operation, whether fair and reasonable or otherwise.

2. AGREEMENT VOID FOR WANT OF CONSIDERATION. An agreement between an assignor and assignee for creditors, subsequent to the execution of the assignment, for the payment of extra compensation to the assignee, is void for want of consideration where the only consideration claimed is the obligation of the assignee to administer the trust to the best of his knowledge, skill and ability, since he was already bound to do that.

3. AGREEMENT INVALID AS AGAINST PUBLIC POLICY. Such an agreement is invalid on the ground of public policy, since the disability of a trustee to bargain with the beneficiary for a share or interest in the property, whether in the form of compensation or otherwise, is absolute in order to avoid the possibility of fraud.

4. ASSIGNEE FOR CREDITORS IS WITHIN PROHIBITION AGAINST RECEIVING GREATER COMPENSATION THAN ALLOWED BY LAW — CODE OF CIV. PRO. § 3280. An assignee for creditors is within section 3280 of the Code of Civil Procedure, forbidding an officer or other person, to whom a fee or other compensation is allowed by law for any service, to charge or receive a greater fee or reward for that service than is so allowed, and, therefore, an agreement to pay such extra compensation creates no binding obligation.

*Carpenter* v. *Taylor*, 28 App. Div. 622, reversed.

(Argued June 15, 1900; decided October 2, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 4, 1898, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John D. Teller* for appellant. The complaint should have been dismissed for the reason that there was no consideration to support the agreement to pay the plaintiff more than his legal fees. (2 Pars. on Cont. 437; *Bartlett* v. *Wyman*, 14 Johns. 260; *Geer* v. *Archer*, 2 Barb. 420; Pollock's Prin. of Cont. 161; *Crosby* v. *Wood*, 6 N. Y. 369; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Robinson* v. *Jewett*, 116 N. Y. 40; *McDonald* v. *Neilson*, 2 Cow. 139; *Wildey* v. *Robinson*, 32 N. Y. Supp. 1018; *Lechowitzer* v. *H. A. P. Co.*, 28 N. Y. Supp. 577; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Deobald* v. *Oppermann*, 111 N. Y. 541.) If there was such a consideration for the agreement, as adopted by the trial court, it was against public policy and void. (*Dunham* v. *Waterman*, 17 N. Y. 9; *Burdick* v. *Post*, 6 N. Y. 522; *Nicholson* v. *Leavitt*, 6 N. Y. 510; *Schlussel* v. *Willett*, 34 Barb. 615; *Goodrich* v. *Downs*, 6 Hill, 438; 2 N. Y. 365;

*Van Nest* v. *Yoe,* 1 Sandf. Ch. 4; *Mead* v. *Phillips,* 1
Sandf. Ch. 83; *Planck* v. *Schermerhorn,* 3 Barb. Ch. 644;
*Cook* v. *Smith,* 3 Sandf. Ch. 333; *Rapalee* v. *Stewart,* 27 N.
Y. 310.) The court should refuse to enforce the contract in
question for the reason that it is made illegal by statute.
(Code Civ. Pro. § 3280; *Hatch* v. *Mann,* 15 Wend. 44;
*White* v. *Madison,* 26 N. Y. 127; *Moss* v. *Cohen,* 158 N. Y.
248; *Crofut* v. *Brandt,* 58 N. Y. 111; *Parker* v. *Newland,* 1
Hill, 87; *McCarthy* v. *Bonynge,* 12 Daly, 356; 101 N. Y. 668;
*United States* v. *Shoemaker,* 7 Wall. 338; . *Oscanyan* v. *Arms
Co.,* 103 U. S. 261; *Harvey* v. *Tama County,* 53 Iowa, 234;
*Fawcett* v. *Woodbury Co.,* 55 Iowa, 154.) The court erred
in admitting parol evidence to vary the written contract upon
which plaintiff's claim is based. (*Thorpe* v. *Ross,* 4 Abb. Ct.
App. Dec. 416; *Thomas* v. *Hunt,* 3 Keyes, 590; *Renard* v.
*Sampson,* 12 N. Y. 561.)

*Robert L. Drummond* for respondent. The rights of cred-
itors having been protected, the assignor was competent to
enter into an agreement to pay the assignee a sum in addition
to the fees allowed by statute. Having made such an agree-
ment he cannot, after having received its benefits, be permit-
ted to disregard it. (*Collier* v. *Munn,* 41 N. Y. 143; *Mat-
ter of Tilden,* 44 Hun, 441; *Meacham* v. *Stearnes,* 9 Paige,
398; *Griffin* v. *Barney,* 2 N. Y. 365; *Nichols* v. *McEwen,*
17 N. Y. 22; *Matter of Schell,* 53 N. Y. 263; *Matter of
Hulbert,* 89 N. Y. 259; *Boezler* v. *Eppley,* 40 Hun, 523;
*Matter of Friend,* 23 Misc. Rep. 300.) The contract in ques-
tion was not illegal under the common law, neither is it made
illegal by statute. (*Moss* v. *Cohen,* 158 N. Y. 248; *B. G. L.
Co.* v. *Claffy,* 151 N. Y. 24; *Bissell* v. *M. S. & N. I. R. R.
Co.,* 22 N. Y. 258.) The agreement in question has been
wholly executed by the respondent, and the appellant is
estopped from disputing its validity. (*McCann* v. *O'Brien,*
40 App. Div. 193; *W. A. Co.* v. *Barlow,* 63 N. Y. 62; *Starin*
v. *Edson,* 112 N. Y. 206; *Woodruff* v. *E. R. Co.,* 93 N. Y.
609; *A. S. Bank* v. *Savery,* 82 N. Y. 291; *R. L. R. Co.* v.

*Roach,* 97 N. Y. 378.)    No parol evidence was admitted by the trial court to vary the written contract.    (Abbott's Tr. Ev. [2d ed.] 632; Underhill on Ev. 303, 304.)

O'BRIEN, J.    On the 30th day of April, 1894, the defendant executed and delivered to the plaintiff a general assignment of all his property in trust for the benefit of creditors. The instrument contains the usual directions for the conversion of the property into money, and the distribution of the same among the creditors in the order therein designated. The last clause of the instrument is in these words: "The said party of the second part doth hereby accept the trust created and imposed on him by this instrument, and covenants and agrees with the said party of the first part that he will faithfully and without delay execute the created trust according to the best of his skill, knowledge and ability."    The plaintiff took possession of the assigned property under this instrument and was proceeding to convert the same into money.    It appears that the defendant was a harness maker and dealer in goods of that character, and for that purpose kept a store in which the business was conducted and where the property was at the time of the assignment.    The plaintiff and defendant, while engaged in taking an inventory of the property, evidently supposed that there might be a surplus after paying all the debts, if the trust was judiciously administered, and to that circumstance we may attribute the present controversy.

On the 24th of May, 1894, about a month after the trust property was vested in the plaintiff and he had entered upon the execution of the trust, he procured the defendant to execute and deliver to him another written instrument which recited the fact that the general assignment had been made and that the understanding between the parties was to the effect that since the legal compensation to the plaintiff as assignee was small and insufficient for the best administration of the property, and that with proper management and diligent attention there probably would be a considerable surplus

after settlement and payment of all just claims of creditors, and that in case there should be such surplus the plaintiff should have and receive, in addition to his legal fees and commissions, the sum of fifteen per cent, estimated at inventory, on all sums so remaining up to $5,000, and ten per cent on anything remaining as surplus in excess of that sum.

It appears that after payment of the debts there remained a surplus in uncollected accounts and goods which, estimated at the inventory value, amounted to $7,292.90. After the trust had been executed and the plaintiff discharged, and the property remaining turned over to the defendant, the plaintiff demanded payment of the amount claimed to be due to him under the special agreement, but the defendant declined to pay the same, and thereupon the plaintiff brought this action to recover the percentages upon the surplus secured to him by the terms of the agreement. The defense was that the agreement was without consideration and was void upon principles of public policy.

The learned trial judge submitted the case to the jury with instructions that if they found that nothing was intended by the agreement except to add to the plaintiff's legal compensation as assignee, then he could not recover, but in case it was found that the agreement provided for the performance of services by the plaintiff in the execution of the trust beyond that imposed upon him by law, under the assignment, then he could recover. The defendant's counsel excepted to the ruling of the court as expressed in the charge in which the intention of the parties in this respect was submitted to the jury. During the course of the trial the defendant's counsel, by exceptions to the denial of a motion to dismiss the complaint on the ground that the agreement was void, as without consideration and against public policy, and to proof of the reasonable value of the extra services claimed to have been performed by the plaintiff, and to oral proof of what the parties intended by the paper, and in various other ways challenged the validity of the instrument, upon the ground that it was void for want of any consideration to support it,

and as against public policy. The defendant's counsel requested the court to charge the jury that, as there was no mention of such a thing as the extra compensation between the parties prior to the execution of the assignment, if the plaintiff then understood that he was to do what he did in the execution of the trust he could not recover. The court declined to so charge, and the defendant's counsel duly excepted.

In the further discussion of the case, it may be assumed that the exceptions taken by the defendant's counsel during the trial and to the charge are sufficient to raise the question as to the validity of this agreement, whether resting upon the writing itself or supplemented by parol proof to show what the parties intended. There is nothing ambiguous in the language of the instrument upon which the action was based. The intention of the parties is perfectly plain, and the legal meaning and construction of the paper was for the court and not the jury. The writing states in the plainest terms that inasmuch as the legal compensation of the assignee was small and insufficient for the best administration of the property, and with such administration there would probably be a surplus, the parties proceeded to agree upon additional compensation and the principles upon which it was to be computed. Parol proof tending to show that the extra compensation stipulated for in the writing was reasonable, or proper, was wholly inadmissible. If the writing was otherwise valid it was enough that the parties had agreed upon the amount. If it was not valid in its general scope and purpose it could not be aided by the opinions of witnesses tending to show that under all the circumstances the arrangement was reasonable and proper. The moment the paper was made and delivered the law impressed upon it a legal character which followed it for all time, without regard to the opinion which the plaintiff or his witnesses had with respect to its operation, whether fair and reasonable or otherwise.

But, doubtless, the most important question in the case is with respect to the validity of the written instrument. If that

was void for want of consideration, or upon principles of public policy, the plaintiff was not entitled to recover. The defendant's promise to pay the percentages on the surplus was, we think, without consideration, and hence the agreement was a mere *nudum pactum*. The only consideration alleged or claimed was the obligation of the plaintiff to administer the trust to the best of his knowledge, skill and ability. But he was already bound to do that, both by his express covenant and by law. A promise by one party to do that which he is already under a legal obligation to perform is insufficient as a consideration to support a contract. This principle has frequently been applied by this court, and is recognized as elementary in all of the authorities. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Robinson* v. *Jewett*, 116 N. Y. 40; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Crosby* v. *Wood*, 6 N. Y. 369; *Geer* v. *Archer*, 2 Barb. 420; *Arend* v. *Smith*, 151 N. Y. 502; *Olmstead* v. *Latimer*, 158 N. Y. 313; 2 Pars. on Cont. 437; Poll. Prin. Cont. 161, 162.)

It is argued by the learned counsel for the plaintiff that since his client managed the trust with such success as to leave a surplus for the assignor the agreement should be sustained. But that is precisely what he agreed to do when he assumed the trust, and what he was bound to do by law. This new promise by the plaintiff to do something which he was already bound to do produced no fresh advantage to the defendant or detriment to the plaintiff. We must assume that the plaintiff performed his duty as trustee with fidelity and skill; but he assumed that obligation when he accepted the trust. It may be admitted that he performed those duties better than they are ordinarily performed by trustees in such cases, but certainly he did not exceed the measure of his obligation to the defendant and his creditors, which was to administer the trust to the best of his knowledge, skill and ability. The fact that trustees in some cases neglect to execute such trusts as well as they might does not furnish any legal ground for one who does his duty to demand extra compensation. The plaintiff's standard of duty was prescribed by law and

by the terms of the trust instrument, and is not to be meas-
ured by the conduct of other trustees who failed to accom-
plish such desirable results.

We think, also, that the agreement is invalid on the ground
of public policy. A trustee who holds the title to property
for the benefit of others cannot use his position for his per-
sonal advantage. He cannot make profit for himself in the
execution of the trust. He cannot ordinarily deal with the
beneficiaries or parties interested in the estate so as to acquire
the ownership of the trust property. We are now dealing
with a case where the extra compensation was not given by
will nor by the trust instrument, but by an agreement between
the trustee and beneficiary after the former had accepted the
trust and become vested with the title to the trust property.
The learned counsel for the plaintiff has cited cases which con-
tain dicta that would seem to support his contention, but in
no one of them was the precise point involved. In most, if
not all of them, the court referred to cases where extra com-
pensation was given by will or by the trust instrument. It
is, doubtless, true, as these cases hold, that a person may do
what he will with his own. He may dispose of what he owns
by gift or any other mode of transfer, if the transaction is
free from fraud and can be said to be his voluntary act. The
principle applies to parties who deal with each other on terms
of equality, or, as it is sometimes expressed, at arm's length.
But it has no application to the case of a trustee who bargains
with the beneficiary for a greater share or interest in the trust
estate than he would be otherwise entitled to. In such cases
the trustee occupies the dominant position, and the beneficiary
or person interested in the estate is, in some respects, sub-
ject to his power and influence. For obvious reasons the
disability of the trustee to bargain with the beneficiary for a
share or interest in the property, whether in the form of com-
pensation or otherwise, is absolute in order to avoid the possi-
bility of fraud. In such cases the law acts upon the principle
that the temptation of self-interest is too powerful and insinu-
ating to be trusted. (Perry on Trusts, §§ 129, 196, 209, 427;

*Munson* v. *S., G. & C. R. R. Co.*, 103 N. Y. 58; *Sage* v. *Culver*, 147 N. Y. 241; *McClure* v. *Law*, 161 N. Y. 78.)

The plaintiff held all of the assigned property in trust, first for the benefit of creditors, and the surplus, if any, for the assignor. While occupying this position he bargained with the defendant for a large share of the surplus, if any, without any other consideration than the performance of services which he had already undertaken to perform for the statutory compensation. When the beneficiary is called upon to perform a contract entered into under such circumstances, as the defendant is in this case, he may resist the claim, and the courts cannot sustain such an agreement without encouraging obvious abuses in the administration of trusts.

The officer, *or other person*, to whom a fee or other compensation is allowed by law for any services, is forbidden by statute to charge or receive a greater fee or reward for that service than is so allowed. (Code, § 3280.) It was held that this statute applied to a claim by a court stenographer for extra compensation based upon an agreement, the consideration of which was his undertaking to furnish minutes more expeditiously than otherwise would be required. (*McCarthy* v. *Bonynge*, 12 Daly, 336; affirmed, 101 N. Y. 668.) We see no reason why it does not apply with equal force to the agreement in this case. When a statute forbids a person to ask or receive compensation for services in an official cr trust capacity, greater than that prescribed by law, an agreement to pay such extra compensation creates no binding obligation. (*Hatch* v. *Mann*, 15 Wend. 44; *Crofut* v. *Brandt*, 58 N. Y. 106; *Moss* v. *Cohen*, 158 N. Y. 240.)

One of the defenses which the defendant interposed to the plaintiff's claim was that the agreement was made under some kind of duress, but this was negatived by the verdict of the jury. We have assumed that it was freely made, but it was, nevertheless, open to the defendant to assail it upon the grounds that have been discussed.

The judgment must be reversed and a new trial granted, costs to abide the event.

LANDON, J.   I concur in the opinion of Judge O'BRIEN.   I take this occasion to remark : The unanimous decision of the Appellate Division, that there is evidence tending to support the verdict, is based upon the assumption that that court rules correctly upon the question of law applicable to the case. Both law and fact must support a verdict to give it validity ; whence it follows that lacking either support it must fail. And where the supporting force of the law has been duly challenged during the trial, as in this case, the question of law is reviewable here, although the question of fact is not.   The opposite doctrine seems to rest upon the theory that it is inconceivable that where the evidence supports a verdict, it can be reviewed upon the law without also reviewing it upon the facts.   Such is not the view of the Constitution, for it does not preclude a review of the verdict or finding, but only of the unanimous decision of the Appellate Division that there is evidence supporting or tending to sustain it.   It regards such decision as upon a question of law, otherwise there would be no need to exclude it from our jurisdiction to review questions of law.   It excludes no other question of law, although it enables the legislature to do so by enabling it to further restrict our jurisdiction.

Now, a review of the question whether there is evidence supporting or tending to sustain a verdict or finding is not a review of that other question of law, namely, what judgment does the law require upon the settled facts.   We may concede that if the course of the trial has been such that we cannot tell by an inspection of the record whether the facts as found require the legal result which the verdict declares, we have no question of law presented to us ; but that is a mere question of practice.   If, by an inspection of the record, we can see just what the facts are that have been settled, and also see that the question of law as to the verdict which the law requires thereon was distinctly presented, then, I think, we have jurisdiction to review it.   Such is this case.

I submit that a party should not lose his right of review of a question of law essential to his protection by a tribunal

established to review it, not because of any omission or fault
of his own, but because the question of law which ought to be
reviewed is pronounced by the same verdict and decision
which also settles the facts.

PARKER, Ch. J. (dissenting).    Two insuperable legal barriers
should bar this court from considering whether the defendant
was at the close of the trial entitled to judgment:

*First.* The defendant did not move at the close of his
testimony or at the close of the case for the dismissal of the
complaint or the direction of a verdict in his favor.    The
legal effect of that omission was recently stated by this court
in *Pollock* v. *Pennsylvania Iron Works Co.* (157 N. Y. 699)
as follows: " The legal effect of the omission of the defendant
at the close of the testimony to move either for a dismissal of
the complaint or the direction of a verdict in its favor was to
consent to the submission of the case to the jury.    We are,
therefore, prevented from considering whether the defendant
was entitled to judgment."    (See, also, *Hecla Powder Co.* v.
*Sigua Iron Co.,* 157 N. Y. 437, and the later case of *Hopkins*
v. *Clark,* 158 N. Y. 299, where the authorities upon this
branch of the practice were considered and the reason for the
rule adopted by this court given.)

*Second.* The Appellate Division has unanimously affirmed
the judgment entered upon the verdict of the jury, which was
not directed.    That the recent amendment to the Constitution
of this state in such a situation deprives this court from con-
sidering whether a defendant was entitled to judgment has
been often held by this court.    It has been said in the discus-
sion of the question that this court cannot review the ruling
of a trial court in denying defendant's motion for a nonsuit
even " if it be true that the trial court erred in holding that
the evidence was sufficient to require the submission of the
case to the jury and the Appellate Division was wrong in
deciding that the evidence sustained the verdict."    (*Szuchy* v.
*H. C. & I. Co.,* 150 N. Y. 219, 222.)    " We have no power
to examine the record even to see if there is any evidence to

sustain the verdict." (*Amherst College* v. *Ritch,* 151 N. Y. 320.) "We are compelled by the Constitution and the statute to presume that there was sufficient evidence to sustain the facts found by the jury." (*Ayres* v. *D., L. & W. R. R. Co.,* 158 N. Y. 254, 257.) "The purpose and effect of the Constitution is to prohibit this court from in any case reviewing the question whether there is any, or sufficient, evidence to sustain a decision or undirected verdict, where there was a unanimous affirmance by the Appellate Division." (*Reed* v. *McCord,* 160 N. Y. 330, 337.) "The question whether a finding of fact, or a verdict upon issues of fact, is sustained by evidence, though in its very nature one of law, is not reviewable here, when the court below has decided unanimously that the judgment should be sustained. This one question of law has, therefore, in such cases, been withdrawn from the cognizance of this court, as well as all questions of fact." (*Marden* v. *Dorthy,* 160 N. Y. 39, 45.) This court is "required to assume in such a case that the evidence was of such a character as to justify the submission of the disputed question to the jury. It is quite true that the question whether there is any evidence tending to prove a fact is one of law  *  *  * " but "the effect of that limitation upon the power of this court to review the unanimous decision below that there was evidence to sustain the verdict is to withdraw a particular question of law, which was formerly reviewable here, from our jurisdiction." (*Meserole* v. *Hoyt,* 161 N. Y. 59, 61.) "We cannot review the facts or even look into the record to see whether they are supported by evidence or whether some other facts should be supplied." (*Farleigh* v. *Cadman,* 159 N. Y. 169, 175.) To the same effect is *Lewis* v. *L. I. R. R. Co.* (162 N. Y. 52), and *Kleiner* v. *Third Ave. R. R. Co.* (162 N. Y. 193), in which cases appeals to the Court of Appeals were allowed, in the first by the Appellate Division and in the last by a judge of this court.

The complaint alleges that the defendant was financially distressed with creditors pressing him for payment but with a considerable stock of goods on hand which he feared " would

be sacrificed in efforts of said creditors to realize their claims and leave nothing for the defendant. That, thereupon, the plaintiff informed the defendant that he believed he could take said property and carry on said business, and therefrom, after paying all expenses, within a reasonable time pay all said debts and have a considerable surplus or residue after paying said claims. That, thereupon, it was agreed between the defendant and the plaintiff that the defendant would pay to the plaintiff 15 per cent of said residue, estimated at an inventory appraisal made, up to $5,000, and 10 per cent upon all residue or surplus over and above said $5,000, and in addition to all other compensation or fees, if the plaintiff would take said property and conduct said business until all defendant's debts and liabilities should be paid or satisfied. That, thereupon, and in consideration thereof the plaintiff took said property and carried on said business and paid all the expenses and debts of the defendant, and performed all things by him to be done." The trial resulted in a verdict in favor of the plaintiff for the amount claimed by him and the judgment entered thereon has been unanimously affirmed by the Appellate Division.

It is contended that a certain written agreement introduced in evidence by the plaintiff is against public policy and void. Without at all consenting to that contention, but assuming for the sake of argument that it may be so, we cannot hold that the defendant was entitled to judgment, for, as we have seen, we cannot even look into the record to see whether the verdict is supported by evidence nor whether there is any or sufficient evidence for we are bound " to presume that there was sufficient evidence to sustain the facts found by the jury." It is difficult to understand a process of reasoning by which the conclusion is reached that, while we cannot look into the record to see whether there is *any evidence* to support a finding by the jury, but must presume that there was ample evidence for that purpose, still, if we do look and find some evidence, we may condemn it as worthless and then hold, notwithstanding the unanimous affirmance of the Appellate

Division, that the defendant was not entitled to judgment and reverse it. I shall content myself with the mere statement of the proposition, for it seems very clear that it furnishes its own answer, and observe in passing that there would have been no opportunity for discussion of the effect of a unanimous affirmance by the Appellate Division had the record contained no evidence, but it has been insisted that when the record contains evidence the quality of it may be considered, and if found insufficient to support a judgment, it can be assumed that there is no other evidence in its support, and the judgment may, therefore, be reversed despite the command of the Constitution as construed by this court. The decisions furnish the answer to this contention, if it do not carry the answer on its very face, when they deny the right of this court to look into the record to see whether there is any evidence to support a verdict, or, if there is any evidence, whether it be sufficient evidence for that purpose. Here there was evidence; its effectiveness only is challenged.

The only questions of law, therefore, that can come before this court on this review must be presented by exceptions taken to rulings of the court in admitting or rejecting evidence and to the charge of the court. (*Ayres* v. *D., L. & W. R. R. Co.,* 158 N. Y. 254, 258.) And exceptions to the charge, which present merely the question whether or not there was evidence to warrant a finding or a verdict, cannot be considered, for it but presents in another form the question of law disposed of in the determination of the court to submit the case to the jury. That question was before this court in *Cronin* v. *Lord* (161 N. Y. 90) where the court was requested to instruct the jury that there was no evidence whatever of fraud or duress, and this court, in holding that the refusal of the court to so charge could not be reviewed in this court, the Appellate Division having unanimously affirmed the judgment entered on the verdict of the jury, said: "It is not reviewable in this court whatever may be the form of the exception, whether to a ruling submitting the case to the jury, refusing a nonsuit, or to a charge that there is or is not evidence, as the case may be,

to warrant a finding or verdict on the disputed questions of fact."

There were but three exceptions taken either to the charge as made or to the refusal of the court to charge as requested by the defendant. The first request was that the jury should be instructed that, if the general assignment was accepted by the plaintiff with the understanding at that time he was to perform all the duties contemplated by the contract of May 24, 1894, then that contract was without consideration. The court declined to vary its charge in that respect, and an examination of the main charge discloses that the court had already fully and fairly instructed the jury in relation to that question. The court, after instructing the jury generally as to the memorandum of agreement, submitted to them whether " in entering into it the parties contemplated and intended to agree to start out to do something more than the mere legal requirements upon the assignee in carrying out the administration of the assigned estate in ordinary cases? If you so find upon the whole evidence in the case that the agreement does provide for more than was the duty of the assignee, then I charge you that it was such an agreement that the parties might properly enter into and provide for; that the defendant in this case would be responsible then for the compensation which he had agreed should be paid to the plaintiff. If, on the other hand, you come to the conclusion that nothing more was contemplated by this agreement than simply adding to the legal fees, then the plaintiff in this action cannot recover, and your verdict must be for defendant." The only other request to charge related to the same general question and need not be referred to, as it was fairly covered by that portion of the charge of the court to which reference has already been made. It should be observed, perhaps, that in the very able brief of the counsel for the appellant it is not claimed that the court erred in its refusal to charge as requested or that the only exception taken to the charge in chief presents error.

We come now to the consideration of the only exceptions which are the subject of review on this appeal upon which the appellant relies for reversal of the judgment. The plaintiff was allowed to testify to certain conversations with the defendant preceding the written agreement of May 24, 1894, and out of which, perhaps, the written agreement grew. The appellant insists that the effect of this evidence was to contradict or alter the written agreement, and, therefore, it should not have been received. If such were its effect, then his position is well taken and the judgment should be reversed. It is true that all of the conversation between the parties did not find its way into the writing which is supposed to express their final agreement, but no part of these conversations either add to or take from the contract. To illustrate : Mr. Carpenter said : " You have quite a large stock here, Mr. Taylor ; " and Mr. Taylor replied : " Yes, but I am afraid it won't pay my debts." This part of a conversation expressed one point of view of each of the parties as to the existing situation, and suggests those preliminary considerations which led the parties to agree upon a course that involved the running of the business for months instead of closing it out as is ordinarily done, with a result most satisfactory to the defendant until the time came for him to pay the agreed compensation for the skillful and almost continuous services of the plaintiff ; and well it may have been satisfactory to him, for during those few months and through the instrumentality of this plaintiff defendant's goods had passed out from under the levy of the sheriff, his debts had been paid and he was in possession of a going business with a stock of substantial value and an available surplus. The evidence complained of was not offered for the purpose of varying the contract or to show that the parties made a different agreement than that which was subsequently expressed in writing, nor did it have that effect, but, in view of the character of the defense, it was receivable because it was proper to show the facts and circumstances surrounding and attending the making of the written agreement inasmuch as the rule of law was not thereby violated

which prohibits the introduction of oral testimony for the purpose of varying the terms of a written agreement.

The judgment should be affirmed, with costs.

BARTLETT, HAIGHT, LANDON and CULLEN, JJ., concur with O'BRIEN, J., for reversal; VANN, J., concurs with PARKER, Ch. J., for affirmance.

Judgment reversed, etc.