EPPENS, SMITH & WIEMANN COMPANY, Appellant, *v.* LOMAX LITTLEJOHN et al., Respondents.

1. SALE OF GOODS TO BE SHIPPED — SHIPMENT MUST BE MADE IN REASONABLE TIME WHEN NO TIME IS FIXED THEREFOR — WHAT CONSTITUTES REASONABLE TIME — BURDEN OF PROOF. Where a contract for the sale of goods to be shipped from a foreign port fixes no time for the shipment, it must be made in a reasonable time, and that depends upon the circumstances of the particular case, such at least as the parties may be supposed to have contemplated in a general way in making the contract, and the burden is upon the seller to show compliance in that particular in an action to recover damages for the buyer's refusal to accept and pay for the goods.

2. PERSONAL INABILITY TO TAKE ADVANTAGE OF SHIPPING FACILITIES NOT AVAILABLE TO DISPROVE OR EXCUSE DELAY IN SHIPMENT. Where upon the trial of such an action it appears that it was expected by the defendant and impliedly agreed by plaintiff that it was in a situation to secure a shipment by the first sailing vessel leaving the port able to store and carry the goods properly; that the shipment was delayed nine months and ten days, which delay was characterized by plaintiff itself within five months from the execution of the contract as "altogether unreasonable" and by one of his witnesses as an "uncommonly long time;" that it was caused by a prejudice or discrimination against the plaintiff or its vendors at the foreign port, although every reasonable effort had been made to ship the goods and they were shipped at the first opportunity, the delay is unreasonable, having been caused, not by a lack of transportation facilities, but by plaintiff's personal inability to take advantage of them, and such personal disadvantage is not within the contemplation of the contract and is not available either to disprove unreasonable delay or to excuse it.

3. APPEAL — RIGHT OF APPELLANT TO COMPLAIN OF THE TESTIMONY OF HIS OWN WITNESSES. Where plaintiff's witnesses have testified in explanation of and as an excuse for the delay in shipment that it was caused through plaintiff's inability to procure vessels by reason of a prej-

udice or discrimination existing against it at the foreign port and theirs is the only testimony upon the subject, he cannot complain on appeal that their testimony has been accepted as true and insist that there is no evidence of such prejudice or discrimination because his witnesses had assumed its existence without stating the particular facts tending to show it.

4. WHEN WAIVER OF DELAY IN SHIPMENT IS QUESTION OF FACT. A question of fact to be answered by inferences from the circumstances is presented by plaintiff's claim that the defendants waived the delay in shipment by not objecting to it on or soon after it notified them, pursuant to the terms of the contract, of the name of the vessel upon which it intended to make the shipment, when it appears that it did not then notify them when the vessel would sail; one of them testifying that upon receiving the notice he supposed the vessel had sailed, although it did not in fact sail until some considerable time thereafter; and it further appears that the plaintiff, pursuant to the contract, notified the defendants of the marks of the goods, and that they repudiated the contract nearly two months before the vessel arrived, and it does not appear that they delayed giving the plaintiff notice of the repudiation.

·5. WHEN RECEIPT OF LETTER REFUSING TO CHANGE METHOD OF SHIPMENT AND FIXING LIMIT OF TIME THEREFOR IS A QUESTION OF FACT —. ASSENT BY FAILURE TO RESPOND. The question whether the plaintiff received a letter which was addressed to it by the defendants, refusing to grant a request preferred by plaintiff's agent, to accept steam transportation *via* another port instead of direct transportation by sailing vessel, and which letter contained in addition an extension of time for shipment to a date therein specified, is a question of fact, when the plaintiff, by its president, the day after the letter bears date, wrote to its agents at the port of shipment that the shipment must be by sail, as no other way would be satisfactory to the vendees; and when the plaintiff has received such letter and fails to respond to it, he will be deemed to have assented to defendants' understanding of the limit of reasonable time required by the contract, and will be bound by the date of shipment therein fixed.

6. EVIDENCE — ADMISSIBILITY OF STATEMENT TENDING TO SHOW UNDERSTANDING OF PARTIES AS TO MEANING OF CONTRACT. A statement by plaintiff's duly authorized agent, when making the contract, that he had no doubt that the shipment could be made during specified months, may be considered by the jury in determining what was a reasonable time in which to make the shipment, since it would show about what the parties understood it to be, although it would not fix the exact time.

*Eppens, Smith & Wiemann Co.* v. *Littlejohn*, 27 App. Div. 22, affirmed.

(Argued June 11, 1900; decided October 2, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March

26, 1898, affirming a judgment in favor of defendants entered upon a verdict, and an order denying a motion for a new trial.

The action was brought to recover damages for defendants' refusal to accept and pay for a certain lot of coffee bought and sold by the following contract:

" Standard Contract.

" New York, *Feby.* 8, 1893.

" Expected mark.

" ' E. S. & W.'

" ' M '

" Sold for account of M. Eppens, Smith and Wiemann Co., to Mess. Littlejohn & Parsons. The sound and made sound portion of about (1,000) one thousand piculs picked Corinchie coffee (marks, numbers and name of vessel or vessels to be given as soon as known and before the arrival of the coffee) to arrive and to be shipped        per sailing vessel called the        from Padang bound for New York, at (27½) twenty-seven and half cents, gold, per pound, basis of four months' notes, bill to date, when the coffee is all in store. Cash as delivered less discount at the rate of seven per cent. per annum for unexpired time. No arrival, no sale.

" TEACKLE W. LEWIS, *Broker.*

" Accepted.

" EPPENS, SMITH AND WIEMANN CO.,

" John F. Pupke, *President.*"

The contract was silent as to the time of delivery, and defendants pleaded affirmatively that it had been unreasonably delayed; also that subsequent to the making of the contract the parties had expressly agreed upon a specific time, prior to which shipment must be made. There was no controversy as to the quality of the coffee, nor as to the amount of damages, the latter having been agreed upon as amounting to five thousand dollars.

The shipment was actually made from Padang November 16, 1893, and the coffee arrived March 12, 1894. This was the usual length of the voyage by sailing vessel. Other facts are stated in the opinion.

At the close of the evidence plaintiff's motion to direct a verdict was denied and the case was submitted to the jury, who rendered a verdict for defendants.

*George A. Strong* for appellant. Assuming that plaintiff was in default for not shipping the coffee within the proper time, this default was waived by the defendants. (*Holmes* v. *Holmes*, 9 N. Y. 525; *Hoyt* v. *Thompson*, 19 N. Y. 207; *Smith* v. *Poillon*, 87 N. Y. 590; *Woolner* v. *Hill*, 93 N. Y. 576; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328.) Upon the evidence there was no question for the jury, whether plaintiff had shipped the coffee within a reasonable time. (*Wangler* v. *Swift*, 90 N. Y. 38; *Hickey* v. *Taaffe*, 99 N. Y. 204; *Martin* v. *Farnsworth*, 49 N. Y. 558; *Doubleday* v. *Kress*, 50 N. Y. 410; *Crane* v. *Evans*, 1 N. Y. S. R. 216.) The case was erroneously submitted to the jury. (*Baldwin* v. *Burrows*, 47 N. Y. 199; *Rowan* v. *Hyatt*, 45 N. Y. 138.)

*Frederic G. Dow* for respondents. The cause was submitted to the jury upon a correct construction of the law, and there was ample evidence to sustain the verdict. (*Pope* v. *T. H. C. & M. Co.*, 107 N. Y. 61; *N. H. & N. Co.* v. *Quintard*, 6 Abb. Pr. [N. S.] 128; *F. L. & T. Co.* v. *Hunt*, 16 Barb. 514; *Jones* v. *Fowler*, 37 How. Pr. 104; *White* v. *Talmage*, 3 J. & S. 223; *Newton* v. *Wales*, 3 Robt. 453; Whart. on Cont. § 882; *Ellis* v. *Thompson*, 3 M. & W. 245; *Morgan* v. *Short*, 13 Misc. Rep. 279; *Mayer* v. *Dean*, 115 N. Y. 557; *Phillips* v. *Taylor*, 17 J. & S. 318; *Beebe* v. *Johnson*, 19 Wend. 500; *Arthur* v. *Wright*, 57 Hun, 22.)

Landon, J. The parties knew when they made their contract that, owing to the few sailing vessels leaving Padang, in Sumatra, for New York, a delay of some weeks or months might occur in making the shipment of coffee. As they fixed no time for the shipment in the contract itself, the law required the shipment to be made within a reasonable time, and the burden was upon the plaintiff to show compliance in

this particular. (*Pope* v. *Terre Haute Car & Mfg. Co.*, 107
N. Y. 61.) What constitutes a reasonable time usually depends
upon the circumstances of the particular case, such, at least,
as the parties may be supposed to have contemplated in a
general way in making the contract. (*Stewart* v. *Marvel*, 101
N. Y. 357.)

The contract was made in New York February 8, 1893.
The plaintiff shipped the coffee from Padang for New York
November 18, 1893, a delay of nine months and ten days. A
sailing vessel left Padang for New York laden with coffee and
rattan March 30th, one May 4th, one Sept. 10th, and another
November 7th. The plaintiff by its agents at Padang requested
each of these vessels to take this coffee and the request was
refused. The evidence given on the part of the plaintiff tends
to show that this refusal was made through the influence of
the plaintiff's rivals in the coffee trade at that port, and the
hostility of the charterers of vessels to one Matzen, the agent
of the vendors of the coffee to the plaintiff, who acted for the
plaintiff in trying to procure the shipment. The plaintiff now
insists that there is no evidence that the delay in shipment
was caused by prejudice or discrimination against itself or its
vendors at Padang. A close examination of the testimony of
the plaintiff's witnesses — and there were no other upon this
point — shows that it consists of their assuming, in explanation
and excuse for the delay, that such prejudice and discrimina-
tion existed, instead of their stating the particular facts tend-
ing to show its existence. But the plaintiff cannot be heard
to complain that this testimony was taken at the value at
which it offered it ; the excuse could be accepted as true,
although insufficient.

In making the contract it was undoubtedly expected by the
defendant, and impliedly agreed by the plaintiff, that the lat-
ter was in a situation to secure a shipment by the first sailing
vessel leaving Padang for New York, able to store and carry
the coffee properly. A sailing vessel usually carries from
15,000 to 20,000 piculs, and the plaintiff's shipment was of
only 1,000 piculs.

Matzen resided at Padang, and was a witness in behalf of the plaintiff. He testified that the shipment was delayed "an uncommonly long time." The plaintiff's president as early as July 10th wrote to the plaintiff's agent Pearson at Padang and characterized the delay as "altogether unreasonable." This letter was objected to by the plaintiff, but it was clearly the plaintiff's act in the matter of the shipment itself. There was much testimony tending to show the experience of the trade as to the time in which shipments from Padang had been made.

Thus the jury could find that although the plaintiff made every reasonable effort to ship the coffee promptly, and did ship it at the first opportunity it could command, nevertheless the delay in the shipment was prolonged, not because of the conditions and circumstances of the shipping facilities themselves, but because of the plaintiff's personal inability to avail itself of them. The delay was, therefore, unreasonable as to the defendant, because uncommonly long, and made so by conditions peculiar to the plaintiff, and not to the transportation facilities. This personal disadvantage was not within the contemplation of the contract, and is not available to the plaintiff either to disprove unreasonable delay or to excuse it. (*Adams* v. *Royal Mail Steam-Packet Co.*, 5 C. B. [N. S.] 492; *Ellis* v. *Thompson*, 3 Mees. & W. 445; *Beebe* v. *Johnson*, 19 Wend. 500; *Arthur* v. *Wright*, 57 Hun, 22; *New Haven & N. Co.* v. *Quintard*, 6 Abb. Pr. [N. S.] 128; *Phillips* v. *Taylor*, 17 J. & S. 318.)

The plaintiff objects that the case was not tried upon the above theory. The trial court charged at the request of the plaintiff:

"If the jury find upon the evidence that plaintiff made the shipment of this coffee upon the first vessel that would give the space for it, then plaintiff is entitled to a verdict."

"If the jury find upon the evidence that plaintiff made all reasonable efforts to ship this coffee promptly, taking into consideration all the facts and circumstances of this case, then plaintiff is entitled to a verdict."

At the request of the defendants the trial court further charged :

"If the jury find that the failure of the plaintiff to obtain freight room for the shipment of coffee was due to a discrimination of charterers against them or their consignors in Padang, that fact is not an excuse for the failure of plaintiff to ship the coffee within a reasonable time."

This portion of the charge modified the preceding portions quoted above, and brought the case within the rules stated. The judgment for the defendants should, therefore, be affirmed unless some exception upon other grounds presents reversible error.

The plaintiff urges that the defendants waived the delay in shipment by not objecting to it on or soon after August 16th, when the plaintiff notified the defendants, pursuant to the terms of the contract, of the name of the vessel upon which it intended to make the shipment. The plaintiff did not then notify the defendants when the vesssel would sail ; one of the defendants testified that upon receiving the notice he supposed the vessel had sailed. On December 27th the plaintiff notified the defendants of the marks of the coffees, and on December 30th the defendants repudiated the contract because of the delay. This was nearly two and a half months before the vessel arrived. It does not appear that the defendants delayed giving the plaintiff notice after finally deciding to repudiate the contract. A question of fact was thus presented, to be answered by inference from the circumstances. The jury could within the evidence answer it as they did in favor of the defendants.

It was one of the defenses that in March, 1893, Lewis, the broker who had made the original contract for the plaintiff with the defendants, made for the plaintiff a further agreement with them whereby the time for the shipment of the coffee from Padang was extended and limited to June 30th. The plaintiff urges that under the evidence in support of this defense and the instructions of the court, to all of which the plaintiff excepted, the jury might have found for the defend-

ants upon this ground and not upon the other. We proceed
to its examination. It will be observed that the first ground
we have discussed rests upon the evidence of the plaintiff and
seems to require a verdict for the defendants, and thus to
eliminate reversibility for errors, if any, upon the ground
now under consideration. That Lewis did assume to make in
behalf of the plaintiff such further agreement with the defend-
ants is settled by the verdict upon conflicting evidence. The
only open questions are, did he have the plaintiff's authority
to do so, or did the plaintiff ratify the agreement after it was
made, or, apart from the agreement, did plaintiff acquiesce in
the defendants' construction of what would be reasonable
time? The plaintiff sent Lewis to the defendants to ask their
permission to ship the coffee *via* Singapore by steamship
instead of by sailing vessel direct from Padang. This would
obviate or lessen the delay in shipment, but the defendants
refused the request because steam transportation might injure
the quality of the coffee. Lewis had no other or further
express authority from plaintiff; whether he had ostensible
authority we do not think it necessary to decide.

The evidence is that the defendants upon making this exten-
sion or limit of time mailed a letter addressed to the plaintiff
stating their refusal to accept steam transportation *via* Singa-
pore, and adding, "We grant an extension of time of shipment
to June 30th, 1893." This letter bears date March 20th. The
plaintiff's president denies the receipt of the letter, but the
plaintiff had other agents who might have received it. On
March 21st, however, the plaintiff, by its president, wrote to
its vendors in Padang that the shipment must be by sail, as
no other way would be satisfactory to the vendees in New
York. The question of the plaintiff's receipt of the letter
was for the jury. (*Austin* v. *Holland*, 69 N. Y. 571; *Ore-
gon Steamship Co.* v. *Otis*, 100 N. Y. 446.) The plaintiff
made no response to the letter. The letter informed the
plaintiff of the result of the mission upon which plaintiff had
sent Lewis to the defendants, and if that result was not satis-
factory, the plaintiff should have promptly repudiated it.

But apart from the question of agency, the plaintiff, through Lewis, asked the defendants a question affecting the method of shipment, and involving the question of its time. The defendants answered the direct question, and then stated their disposition of the involved question of time. The answer was their understanding of the limit of reasonable time required by the contract. If it was not also the plaintiff's, it was its duty to say so.

If the letter had proposed an alteration of the contract, the rule might be different, but it assumed to give it a fixed meaning consistent with its terms, a meaning apparently favorable to the plaintiff, a meaning to which the plaintiff, without any response, could hold the defendants, and, therefore, to which, in the absence of a response, it should itself be held.

The defendants gave evidence to the effect that Lewis, when he made the contract with them in February, stated that he had no doubt the shipment would be made in February — March. The trial court charged the jury that if they found that Lewis made that statement, the jury might consider it in determining what was a reasonable time within which the shipment was to be made. That was not error. There is no question about the authority of Lewis to make the statement. (*Mayer* v. *Dean*, 115 N. Y. 556.) One test of reasonable time is the time within the contemplation of the parties in making the contract; if they then talked it over and understood it alike, while that fact would not fix the exact limit, it would show about what they understood it would be. If Lewis had then said it would probably be twelve months before the shipment could be made, the plaintiff would have sought to show it. In either case the evidence would not vary the contract, but would show its meaning as the parties understood it. (*Ellis* v. *Thompson, supra ;* Wharton on Contracts, sec. 882.)

The judgment should be affirmed, with costs.

Judgment affirmed.