FRANKFURT–BARNETT CO. v. WILLIAM PRYM CO., Limited.

(Circuit Court of Appeals, Second Circuit. July 17, 1916.)

No. 287.

1. SALES ⬅152, 163—CONSTRUCTION OF CONTRACT—DELIVERY IN INSTALLMENTS.

A contract between merchants for the sale of goods to be delivered in "reasonable installments," as required by the buyer, binds the buyer to make his demands at reasonable times and in reasonable amounts, and the seller to make delivery in reasonable times as demanded.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 357, 386–388; Dec. Dig. ⬅152, 163.]

2. ACCORD AND SATISFACTION ⬅16—CONTRACTS ⬅317—DISCHARGE AFTER BREACH—SUBSEQUENT AGREEMENT—COMPLETE PERFORMANCE.

After breach, a contract can only be discharged by a release under seal or an accord and satisfaction; an accord, unless followed by full performance, or unless clearly so agreed, is not sufficient.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 116–122; Dec. Dig. ⬅16; Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. ⬅317.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CONTRACTS ⊛⟶316(1)—BREACH—WAIVER.
    A waiver of a breach of contract to be effective must have been intended as such and so understood by the other party or such action as to create an estoppel.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1382, 1480; Dec. Dig. ⊛⟶316(1).]

4. CONTRACTS ⊛⟶316(1)—BREACH—WAIVER.
    Acceptance of performance of a contract after breach may operate as a waiver of the right to treat the contract as terminated by the breach, but is not a waiver of the right of action to recover damages therefor.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1382, 1385, 1480; Dec. Dig. ⊛⟶316(1).]

5. SALES ⊛⟶179(1)—DISCHARGE AFTER BREACH—NEW AGREEMENT.
    Plaintiff and defendant entered into a contract for the sale and purchase of goods to be delivered by defendant in installments as required by plaintiff. Several months afterward, after a number of installments had been demanded and not delivered, defendant promised within a short time to make further deliveries pursuant to the contract, and plaintiff agreed to accept the same. Held, that such agreement did not supersede the original contract nor operate as a discharge or waiver by plaintiff of his right of action for the previous breaches.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456, 459, 467, 468; Dec. Dig. ⊛⟶179(1).]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Frankfurt-Barnett Company against the William Prym Company, Limited. Judgment for defendant, and plaintiff brings error. Reversed.

This action was commenced in the Supreme Court, state of New York, on October 17, 1914, and upon motion of defendant was removed by that court to the United States District Court, on the ground of diversity of citizenship. The plaintiff is a corporation organized under the laws of the state of New York and having its principal place of business in the borough of Manhattan, city of New York. The defendant is a foreign corporation organized under the laws of the Empire of Germany and is doing business and has an office in the borough of Manhattan, city of New York.

The facts appear in the opinion.

Sidney Rosenbaum, of New York City, for plaintiff in error.

Huntington, Rhinelander & Seymour, of New York City (Origen S. Seymour and Leverett J. Luce, both of New York City, of counsel), for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is an action brought to recover damages in the sum of $15,000 alleged to have been occasioned by the failure to perform a contract. The complaint states that in April, 1914, the plaintiff and defendant entered into an agreement, whereby it was agreed that the defendant should sell and deliver to plaintiff in the borough of Manhattan, city of New York, in reasonable installment deliveries as required by plaintiff, 7,000 great gross of metal dress fasteners, known as Sonomer Fasteners, in assorted sizes, and that plaintiff should accept the same from the de-

fendant and pay therefor 65 cents for each great gross. It is averred that during the months of April, May and June, and down to July 21, 1914, the plaintiff repeatedly demanded deliveries of the fasteners in assorted sizes, aggregating 4,000 great gross; but that defendant delivered only 1,137 great gross, and that of those so delivered 747 great gross were of one size only, so that the defendant failed and refused to make its deliveries in any reasonable quantity or in any reasonable assortment of sizes as it had agreed. The complaint then went on to state that during the months of July and August and down to September 17, 1914, plaintiff continued to demand deliveries of the fasteners from the defendant as provided in the contract, but that defendant wholly failed to make the deliveries, although frequently promising that the deliveries would be made, and that no deliveries had been made since July 21, 1914. The undelivered balance under the terms of the contract amount to 5,887 great gross, and the plaintiff avers that it has duly performed all the terms of the contract on its part to be performed and paid for all fasteners delivered to it, excepting for 599 great gross for which the amount of $389.35 was to be paid. It is also averred that during the months of August and September, 1914, and down to the commencement of the action, there was no market in New York where fasteners of the kind and in the quantities agreed to be delivered by defendant under the contract could be purchased.

In its answer the defendant, after making various admissions, declared that the contract related to fasteners not at the time in existence, but which were to be manufactured in Germany and shipped from that country to defendant, and that the contract was conditional upon the fasteners arriving from Germany, which was well known to the plaintiff before and at the time of making the contract. Then it is averred that on August 1, 1914, the European War broke out, and that this prevented the shipment of fasteners from Germany to this country. The answer goes on to say that on September 17, 1914:

"It was then agreed by and between the plaintiff and defendant, in full settlement, accord, and satisfaction of any and all contracts and disputes then existing, or alleged to exist, between them, and in consideration of each waiving its claims under the said agreement, that the defendant would deliver to the plaintiff a reasonable and substantial amount of such fasteners out of the next shipment which the defendant should receive from abroad (which the defendant was then notified by its broker in Rotterdam, Holland, that it was to receive), such reasonable amount to be determined by the defendant taking into consideration the demands of its other customers, and that the plaintiff would receive the said fasteners and pay for the same in cash upon delivery at the rate of 65 cents for each great gross; and, further, that upon the defendant notifying the plaintiff that such shipment had been made from abroad, and that the defendant would deliver part thereof to the plaintiff, the plaintiff would then pay to the defendant forthwith the said sum of $389.35, and that thereafter the defendant would deliver to the plaintiff reasonable and substantial amounts out of subsequent shipments, if any, to be received by the defendant, but not exceeding total of 6,000 great gross, and that the plaintiff would receive and pay therefor in cash upon delivery at price of 65 cents per great gross."

The answer continues as follows:

"On or about September 25, 1914, the defendant notified the plaintiff that such shipment had been made from abroad and that within the next few days it would deliver to the plaintiff 126 great gross of fasteners of the size 'O'

white, and 126 great gross of fasteners of the size 'O' black, and demanded payment of said sum of $389.35; but the plaintiff refused to pay the sums or any part thereof, and has not paid the same, and the plaintiff notified the defendant that it would not accept the said fasteners."

The plaintiff put in a reply in which it denied the above allegations contained in the answer as to a new contract having been made on September 17, 1914, and went on to aver that:

"On or about the date mentioned therein, the defendant, being in default in deliveries of fasteners to the plaintiff, assured the plaintiff that on or before the 26th day of September, 1914, defendant would receive a shipment of fasteners from Europe, and would thereupon make to the plaintiff a large delivery of a full assortment of sizes of fasteners, pursuant to the contract, and plaintiff agreed to pay cash for same upon delivery."

As the defendant moved for judgment upon the pleadings, it admitted the truth of the facts alleged in the reply.

The defendant demanded a bill of particulars, and it was furnished by plaintiff.

The cause having duly appeared upon the day calendar of the court for trial, the defendant, pursuant to section 547 of the New York Code of Civil Procedure, made a motion in open court for judgment on the pleadings dismissing the complaint and in favor of the defendant on its counterclaim. The District Judge dismissed the complaint "upon the merits as revealed by the complaint, but without passing upon or seeking to prevent the right of plaintiff to maintain suit upon the modified agreement of September 17, 1914."

Judgment was also entered upon the pleadings in favor of defendant and against the plaintiff on the counterclaim for $389.35.

The District Judge, assuming without deciding that the complaint set forth an enforceable agreement and a breach of the same, thought that the reply established the proposition that all failures or refusals by defendant to deliver fasteners before September 17, 1914, had been waived, and that a new modified contract came into existence on that date, whereby defendant was to deliver a "full assortment of sizes" on or about September 26, 1914. No opinion was expressed as to whether the plaintiff is entitled to damages for a failure or refusal of defendant to deliver, on or about September 26th, a full assortment of sizes of fasteners.

As to the judgment on the counterclaim, the court said:

"Taking all these pleadings together, the one thing that is plain and plainly admitted is that on or before September 17, 1914, and ever since; the plaintiff has owed the defendant the sum of $389.35. The fact that plaintiff may hereafter sue defendant for breaches of the contract as modified on September 17th is no reason why it should not pay what it now owes."

The contract into which these parties entered was a contract between merchants, and time is the essence of such contracts. As the Supreme Court, in Norrington v. Wright, 115 U. S. 188, 203, 6 Sup. Ct. 12, 29 L. Ed. 366 (1885), held an agreement regarding the delivery of the goods is ordinarily to be regarded as a warranty or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract. Under this contract, however, the goods were not to be delivered all at one time, but in install-

ments. Such contracts are sometimes referred to as involving divisible promises. There is authority for saying that, where the installments extend over a considerable period of time, a default either in delivery or in payment does not necessarily and in all cases discharge the contract, although it necessarily gives rise to an action for damages. See Simpson v. Crippin, L. R. 8 Q. B. 14; Mersey Steel & Iron Co. v. Naylor, 9 App. Cas. 434; Freeth v. Burr, L. R. 9 C. P. 208. Anson on Contracts (Huffcut's 2d Ed.) §§ 386, 387. But in Norrington v. Wright, supra, the Supreme Court came to the conclusion that such contracts are entire and a failure to make the delivery of a single installment gives the other party the same right to rescind the whole contract that he would have had if it had been agreed that all the goods should be delivered at once.

[1] But the April contract which the parties in this case made, while it provided for delivery in installments, did not fix specifically the date upon which the deliveries were to be made. It provided for "reasonable installment deliveries as required by plaintiff." And the defendant contended that the contract was indefinite for failure to designate a time for delivery. The contention was without merit. If a contract fails to fix the exact time for delivery, the law fixes it for the parties by presuming that a reasonable time was intended. The law was so declared in the Court of Appeals of New York in Eppens, Smith & Wiemann Co. v. Littlejohn, 164 N. Y. 187, 58 N. E. 19, 52 L. R. A. 811 (1900).

It is our understanding that under a contract like the one made in April the plaintiff would have to make his demands within reasonable times and in reasonable amounts, and that defendant would have to make deliveries in reasonable times as demanded.

This brings us to inquire whether there was a September contract which put an end to the April contract on which this suit was brought. The April contract is not alleged to have been in writing, and the agreement made in September appears to have been in parol. We do not therefore have to inquire whether a contract in writing can be varied or waived by a parol contract which modifies its terms. It has been held in Massachusetts and in some other states that executory parol agreements cannot vary or modify the terms of a written contract. See Adams v. Nichols, 19 Pick. (Mass.) 275, 31 Am. Dec. 137; Walker v. Greene, 22 Ala. 679; Rucker v. Harrington, 52 Mo. App. 481; Romaine v. Judson, 128 Ind. 403, 26 N. E. 563, 28 N. E. 75. The question whether a contract required to be in writing under the statute of frauds can be varied by parol was to some extent considered in Thomson v. Poor, 147 N. Y. 402, 408, 42 N. E. 13; the Court of Appeals saying that the subject is "involved in distressing perplexity." But upon the pleadings in the case under consideration the question was not before the court below and is not before us upon the appeal and has not been referred to by counsel.

The law relating to the discharge of contracts is dependent upon whether the matter relied upon as a discharge occurs before, at the time, or after performance becomes due. Leake on Contracts (6th Ed. with Canadian Notes) p. 575.

The authorities establish the proposition that a contract may be dis-- charged at any time before performance is due by a new agreement validly made. Thus in Goss v. Lord Nugent, 5 Barn. & Ad. 58, Lord Denman, C. J., said that:

"After the agreement has been reduced to writing, it is competent for the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to or subtract from or vary or qualify the terms of it, and thus to make a new contract."

So in Swain v. Seamens, 9 Wall. 254, 19 L. Ed. 554 (1869), Mr. Justice Clifford, speaking for the Supreme Court of the United States, uses similar language and says that in cases not within the statute of frauds and which fall within the general rules of the common law that:

"It is held that the parties to an agreement, though it is in writing, may, at any time before the breach of it, by a new contract not in writing, modify, waive, dissolve, or annul the former agreement, if no part of it was within the statute of frauds."

And to the same effect is the earlier case in the same court of Emerson v. Slater, 22 How. 29, 41, 16 L. Ed. 360 (1859), where the court held that parol evidence was admissible to show that the parties had, subsequently to the date of the contract, and before a breach of it, made a new oral agreement, on a new and valuable consideration, enlarging the time of performance, and varying its terms. In Leake on Contracts (6th Ed.) p. 576, it is laid down that:

"A contract may be discharged at any time before the performance is due by a new agreement validly made."

So in Huffcut's Anson, p. 340, note, it is said:

"A bilateral contract may before breach be discharged or varied by substituting a new one for it."

In the case at bar the defendant seeks to substitute for the contract of April a new contract made after breach and on September 17th.

[2] The rule governing the subject is stated in Chitty on Contracts (15th Ed. 1912) p. 809, as follows:

"A contract not under seal, whether verbal or written, may before breach be discharged by parol, but after breach the discharge must, whether the contract be under seal or not, be by release under the seal, unless it operate as an accord and satisfaction."

It is not claimed in this case that there is a release under seal.

In Leake on Contracts (6th Ed. with Canadian Notes) p. 576, that writer says:

"The claim or right of action arising upon a breach of contract can no longer be satisfied by a performance or tender of the debtor without the agreement of the creditor to accept it in satisfaction; but it may be discharged by an accord and satisfaction made with the creditor, or by a release given by him, or by a judgment recovered by him."

In the case under consideration, the question does not arise whether the breach of the original contract has been cured by performance or

tender of full performance because there has been no full performance, and no tender of full performance.

This brings us to inquire whether there has been an accord and satisfaction. The defendant in its answer declares that the September agreement was in full settlement, accord, and satisfaction of any and all contracts and disputes then existing between the parties. An accord and satisfaction is, of course, a good plea in actions upon simple contracts. But an accord is not a bar to an action on the original obligation unless it has been followed by satisfaction. The general rule is that to amount to a bar the accord must be fully performed, unless the agreement or promise, instead of the performance thereof has been accepted in satisfaction. 1 Corpus Juris, 530, 531. The creditor derives no satisfaction from the promise without the performance. If it is claimed that the creditor intended to accept the promise as a satisfaction and not the performance, then that intention must be clearly shown. Henderson v. McRae, 148 Mich. 324, 111 N. W. 1057; Overton v. Conner, 50 Tex. 113. "Accord," says Sir William Blackstone (3 Bl. Com. 15), "is a satisfaction agreed upon between the party injured and the injuring, which, when performed, is a bar to all actions upon this account." In Paytoe's Case, 9 Co. 79, it is said:

"And every accord ought to be full, perfect 'and complete; for, if divers things are to be done and performed by the accord, the performance of part is not sufficient, but all ought to be performed."

And Chitty on Contracts (16th Ed.) p. 798, states, "The general rule is that accord without satisfaction is no bar." He reiterates the statement on page 801 saying:

"Every accord ought to be full, perfect, and complete; for, if divers things are to be performed by the accord, performance of part is not sufficient; or, if a thing is to be performed at a day to come, tender of refusal is not sufficient without actual satisfaction and acceptance."

And see Kromer v. Heim, 75 N. Y. 574, 31 Am. Rep. 491. In Goodrich v. Stanley, 24 Conn. 613, 622, the court after examining the authorities lays it down that the mere circumstance that there was an accord with mutual promises does not have the effect of extinguishing the original obligation. It adds that:

"Where it is claimed that it is so extinguished, it ought most explicitly to appear that such was the intention of the parties."

In the case at bar no such intention to accept the promise rather than the performance has been made "most explicitly" to appear, and there is nothing whatever to suggest in the least degree that such an intention existed.

Before leaving the subject of accord and satisfaction, we may notice the fact that in New York the technical distinction between a satisfaction before or after breach seems to have been disregarded, and a new agreement by parol, followed by actual performance of the substituted agreement, whether made and executed before or after breach, is treated as a good accord and satisfaction of the covenant. See McCreery v. Day, 119 N. Y. 1, 9, 23 N. E. 198, 6 L. R. A. 503, 16 Am.

St. Rep. 793 (1890). But this fact is without importance in this case, as the September agreement was not followed by actual performance.

[3] It is said that the September agreement operated as a waiver of defaults up to that date. The term "waiver" implies that the right or privilege waived must be in existence at the time of the waiver. In this case it is assumed to have been the original contract. But the question of waiver is mainly a question of intention. Gardner v. New London, 63 Conn. 267, 28 Atl. 42. It involves the notion of an intention on the part of one having a right to relinquish it. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. 40 Cyc. 261. In Bennecke v. Insurance Co., 105 U. S. 355, 26 L. Ed. 990 (1881), the Supreme Court said:

"A waiver of a stipulation in an agreement must, to be effectual, not only be made intentionally, but with knowledge of the circumstances. This is the rule when there is a direct and precise agreement to waive the stipulation. A fortiori is this the rule when there is no agreement, either verbal or in writing, to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party. Thus, where a written agreement exists and one of the parties sets up an arrangement of a different nature, alleging conduct on the other side amounting to a substitution of this arrangement for a written agreement, he must clearly show not merely his own understanding but that the other party had the same understanding. Darnley (Earl) v. London, Chatham & Dover R. Co., Law Rep. 2 H. L. 43."

Do the facts as we must accept them on the pleadings show that the plaintiff intended to waive his rights to damages for the failure to deliver pursuant to the April contract? Not unless it is to be found in the September agreement to accept "a large delivery of a full assortment of sizes of fasteners, pursuant to the contract." There is no express waiver; but a waiver does not need to be express, but may be shown by acts and conduct from which an intention to waive may reasonably be inferred. And unless a waiver is under seal, or arises from conduct creating an estoppel, it must be supported by an agreement founded upon a valuable consideration. Emerson v. Slater, supra; Hastings v. Lovejoy, 140 Mass. 261, 2 N. E. 776, 54 Am. Rep. 462; Underwood v. Farmers' Joint-Stock Ins. Co., 57 N. Y. 500; Atlantic Coast Line R. Co. v. Bryan, 109 Va. 523, 65 S. E. 30. We find in this record no evidence of an intention to waive the plaintiff's right of action to recover damages for the breach of the April contracts.

[4] The difficulty in this case has grown out of the failure to distinguish between a waiver of the right to treat a breach of a contract as a discharge of the contract, and a waiver of the right to recover the damages occasioned by the breach. The two rights are distinct and must not be confused. In Page on Contracts, vol. 3, § 1519, that writer correctly says that waiver of the right to treat a breach of contract as a discharge of contract liability may take place without a waiver of the right to maintain an action for damages, and the weight of authority is that it is not such a waiver. And in section 1510 the same writer states that acceptance after breach is not a waiver of a right of action for damages is apparent when it is considered that the

party not in default is often constrained by his necessities to take what he can get under his contract when he can get it.

[5] The September agreement as set forth in the reply did not supersede the April contract. That remained unchanged. But the plaintiff by agreeing that defendant might deliver in September the fasteners which he was bound to deliver in April, May, and June simply waived his right to terminate the contract and to decline to receive any deliveries in September or at any time thereafter, provided the defendant made the subsequent deliveries as then promised. There certainly was no intention on plaintiff's part to do more than that, and he still had his right of action for the damages he had suffered by the failure to deliver as promised in the April agreement. Such we believe to be the law in this country generally, and it is the law of the state of New York where this contract was made.

In Granniss & Hurd Lumber Co. v. Deeves, 72 Hun, 171, 25 N. Y. Supp. 375 (1893), Judge Van Brunt, speaking for the court, said:

"Undoubtedly the defendant had the right to terminate the contract if the plaintiff was not proceeding with that diligence which the terms of the contracts required; but this was not his only remedy. He had a right to let the plaintiff go on and complete his work, and then he had the right to say: 'I will pay you for the work you have done, but I want the damages you have caused me in not doing my work as you agreed to do it.'"

The court understood that to be the principle decided in Dunn v. Steubing, 120 N. Y. 232, 24 N. E. 315 (1890).

In Crocker-Wheeler Co. v. Varick Realty Co., 104 App. Div. 568, 88 N. Y. Supp. 412, 94 N. Y. Supp. 23 (1905), the parties had entered into a contract for the installation of an elevator in a building. The contractor did not complete the contract within the prescribed time. The owner did not exercise the right to terminate the contract, but permitted the contractor to go on and complete the work. The court held that the owner thereby waived the right which it otherwise might have asserted to plead the delay in the performance of the contract as a defense to an action for the agreed price of the elevator; and it was also held, and that is the portion of the decision with which we are particularly concerned, that the owner did not thereby waive its right to counterclaim, in an action brought by the contractor to recover the agreed price of the elevator, the amount of any actual damages which it had suffered by reason of the delay in performance.

This doctrine was again announced in Beyer v. Henry Huber Co., 115 App. Div. 342, 100 N. Y. Supp. 1029 (1906); and in Reading Hardware Co. v. City of New York, 129 App. Div. 292, 113 N. Y. Supp. 331 (1908); as well as in General Supply & Construction Co. v. Goelet, 149 App. Div. 80, 133 N. Y. Supp. 978 (1912).

It is said that the September agreement was a new contract and superseded the April contract. We do not so understand it. The September agreement was that defendant would make "to the plaintiff a large delivery of a full assortment of sizes of fasteners pursuant to the contract" out of a shipment which it was to receive from Europe on or before September 26, 1914. Such was the promise made by the defendant, according to the reply, and we are not at liberty under the

circumstances of this case to go beyond the reply. As the contract of April already bound it to deliver the fasteners in reasonable installments and in assorted sizes as plaintiff demanded and as plaintiff had demanded, prior to July 21st, 4,000 great gross in assorted sizes, and had only received 1,113 great gross, the greater part of which were of one size, we are at a loss to see wherein defendant promised anything it was not already under obligation to render under its original contract of April; and in that case the agreement is without consideration, and therefore was a mere nudum pactum at the time it was made. Carpenter v. Taylor, 164 N. Y. 171, 58 N. E. 53; Vanderbilt v. Schreyer, 91 N. Y. 392; Goldsborough v. Gable, 140 Ill. 269, 29 N. E. 722, 15 L. R. A. 294; McCarty v. Hampton Building Ass'n, 61 Iowa, 287, 16 N. W. 114; Runkle v. Kettering, 127 Iowa, 68, 102 N. W. 142; Widiman v. Brown, 83 Mich. 241, 47 N. W. 231.

After the plaintiff agreed that defendant might make deliveries in September, it might have revoked its consent at any time in so far as it had not been acted upon. Thomson v. Poor, 147 N. Y. 402, 42 N. E. 13 (1895).

We are aware that some of the courts have said that an agreement to set aside an earlier contract by a later one in which the promisor agrees to do the same thing he contracted for in the first contract is supported as to consideration by the abandonment of the first contract. Connelly v. Devoe, 37 Conn. 570; Rogers v. Rogers, 139 Mass. 440, 1 N. E. 122. In Connelly v. Devoe, the court in sustaining the second contract calls attention to the fact that at the time it was made there was no actionable breach of the original contract. In Rogers v. Rogers, the court in sustaining the second contract says:

"If we assume that the original agreement was sufficiently definite to constitute a valid contract, as it was a continuing contract, the parties could clearly substitute for it a new contract, which should determine their rights and liabilities after the new contract was made, and this would operate as a waiver or discharge of the first contract as to future orders and deliveries, unless it appeared that the first contract had been broken by an absolute refusal on the part of the defendant to perform it, and that the new contract was not intended to be a discharge of the breach. * * * If the parties agreed that these orders should be filled at the prices stipulated for in the new contract, without considering whether the new agreement would of itself be a discharge of these partial breaches, performance of the new agreement would operate as a discharge, or an accord and satisfaction, unless it appeared that such was not the intention of the parties. Such a substituted agreement prima facie takes the place of the original agreement as to everything remaining unperformed."

But in the view we take of the case at bar there was no express and no implied agreement that the April contract should be set aside. It was, as already pointed out, a mere consent to receive deliveries in September.

The claim that the plaintiff was in default having withheld $389.35 due for fasteners actually delivered and accepted is without merit. At the time this money was withheld, it was manifest that defendant had failed to perform its contract and was likely to continue doing so. In holding on to this money as security against damages it might expect to recover in an action for the breach, the plaintiff lost none of

its rights. Sperry & Hutchinson Co. v. O'Neill & Adams, 185 Fed. 231, 107 C. C. A. 337.

It is clear to us that the complaint should not have been dismissed; and we may point out that, if the theory of the court below had been correct that there was a new contract which superseded the earlier one, there could have been no judgment on the counterclaim, because the court held that no suit had been brought on the new contract under which it was agreed that that sum should be paid when delivery was made under the alleged substituted agreement.

We may also point out that, if the complaint was defective in not stating what would be a reasonable time within which to deliver the fasteners, the defect was cured by the answer which stated that on September 17th all parties agreed that the delivery of a large quantity of assorted sizes on or before September 26, 1914, would satisfy the contract.

Judgment reversed.

WARD, Circuit Judge, concurs in the result.