THE RICHLAND QUEEN.

RICHLAND S. S. CO. v. BUFFALO DRY DOCK CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

No. 31.

1. CONTRACTS ⬥⟹212(2)—REPAIRS—TIME.

Under dry dock company's contract to repair a vessel, where no time was specified, the repairs are to be made within a reasonable time; and where a strike occurred among the operatives of the dock company, which delayed the work, the question is whether the delay was reasonable or not, in view of the circumstances at the time the contract was being performed.

2. CONTRACTS ⬥⟹300(5)—PERFORMANCE—EXCUSE—STRIKES.

Where, after a dry dock company had contracted to repair a vessel, its employés demanded shorter working hours, and struck because their demand was refused, held that, though the strike was not accompanied by violence, it was an excuse for delay in completing the repairs; the delay being reasonable in view of the strike, and there being no difference in principle between peaceable and violent strikes.

Manton, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Western District of New York.

Libel by the Buffalo Dry Dock Company against the steamship Richland Queen, her engines, etc., claimed by the Richland Steamship Company, together with a libel by the Richland Steamship Company against the Buffalo Dry Dock Company. From decrees for the Dry Dock Company, the Steamship Company appeals. Affirmed.

Thomas C. Burke, of Buffalo, N. Y., and Hoyt, Dustin, Kelley, Mc-Keehan & Andrews, of Cleveland, Ohio, for Buffalo Dry Dock Co.

Harvey D. Goulder and Goulder, White & Garry, all of Cleveland, Ohio, and Botsford, Lytle, Mitchell & Albro, of Buffalo, N. Y. (Thomas H. Garry, of Cleveland, Ohio, and Almon W. Lytle, of Buffalo, N. Y., of counsel), for Richland S. S. Co.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is an appeal from a decree of Judge Hazel in favor of the Buffalo Dry Dock Company for the reasonable cost of repairs to the steamer Richland Queen, and dismissing the cross-libel of the Richland Steamship Company for damages for loss of the use of the vessel due to unreasonable delay in making the repairs.

September 5, 1916, the steamer was sent to the Dry Dock Company's yard, and remained there until December 5th. No express contract for the repairs was made, but the reasonable value of the use of the dry dock and of the repairs is admitted to have been $39,984.08. The Steamship Company, in order to get possession of its vessel, paid $30,000 to the Dry Dock Company without prejudice, and gave a stipulation for the balance, and in its cross-libel alleged that the repairs should have been completed by October 9, 1916, and that it was deprived of the use of its steamer during the remainder of the season to November 13th, or 37 days, at the reasonable rate of $500 a day, aggregating $18,500.

The Dry Dock Company kept an open shop, and justified the delay by the fact that a strike of its workmen began October 14, 1916, without grievance or warning, which prevented by intimidation and violence old hands and new hands from working.

At the trial the only contention was as to the damages for delay, viz. whether the Steamship Company was entitled to a decree for $18,-500, less the unpaid balance of the Dry Dock Company's bill of $9,-984.08.

The working day in the Buffalo shipyards at the time in question was nine hours, with a half holiday on Saturday during the summer months, while some competing yards on the Lakes required a nine-hour, and some a ten-hour, day.

October 14, 1916, a committee of workmen demanded of the Dry Dock Company an eight-hour day without reduction of pay, which the company refused, and notified the men that thereafter they must work a straight nine-hour day for six days in the week. As a consequence 80 to 90 per cent. of the men left the yard, and although the company did its best to secure an adequate force of workmen, it was not able to do so. The strike involved no violence, although picketing was kept up in the neighborhood of the yard, and there was much persuasion of both old and new hands. The men gradually came back between November 15th and December 2d, without any change in the hours of labor, and there has been no labor trouble since that time.

[1, 2] Judge Hazel was of opinion that the Dry Dock Company, in view of all the circumstances, made the repairs to the steamer in a reasonable time, and was not liable under the decision of the Court of

Appeals of the state of New York in D., L. & W. R. R. Co. v. Bowns, 58 N. Y. 573. In that case, however, there was an agreement to deliver coal within a fixed time, with an express exception of interference by strikes. No time was fixed in the case under consideration for making the repairs, so that the obligation of the Dry Dock Company was to make them within a reasonable time, and there was no exception of strikes. The question, therefore, is simply whether the delay complained of was reasonable or unreasonable, not in view of the circumstances existing at the time the contract was made, but in view of the circumstances existing when the contract was being performed. Empire Transportation Co. v. P. & R. R. R. Co., 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623; Hick v. Rodoconachi, 2 Q. B. D. 626.

The Court of Appeals of the state of New York has held that a peaceable strike of the employer's servants is no defense to a claim for delay (Blackstock v. New York & Erie R. R. Co., 20 N. Y. 48, 75 Am. Dec. 372), while a strike with violence is a defense (Geismer v. Lake Shore & M. S. Ry. Co., 102 N. Y. 563, 7 N. E. 828, 55 Am. Rep. 837). The employer in each of these cases was a common carrier, but, as the recovery sought was for damages caused by delay in delivery, the decisions are applicable to the situation under consideration, because common carriers are not insurers of prompt delivery, but only liable for ordinary care and diligence. The duty is the same as in the present case, viz. the performance in a reasonable time in view of all the circumstances.

We do not appreciate the distinction made in these cases, thinking that the difference between a peaceable and a violent strike as a defense is one of degree only, a strike with violence being more likely to be a good defense than a peaceable strike. The question, however, in each case is the same, whether the conduct of the employer was reasonable. A peaceable strike upon frivolous grounds, which the employer did all he could to prevent, should be a defense against a claim for delay. On the other hand, a violent strike on justifiable grounds, which the employer either fomented or unreasonably resisted, ought to be no defense. Of course, the employer in either case could end the strike by surrendering. We are not disposed to differ with Judge Hazel's finding that the Dry Dock Company's performance was reasonable in view of the strike.

Decree affirmed.

MANTON, Circuit Judge (dissenting). I dissent. About the 10th of September, 1916, pursuant to an oral agreement, the appellee undertook to make repairs to the Richland Queen which was then placed in its dry dock. Work was immediately commenced thereon, and in the ordinary course of the company's business it should have been completed about October 24th. The repairs, however, were not completed until December 8, 1916. These facts are admitted. No time was fixed for the completion of the work, and it was therefore implied that the work would be done in a reasonable time. A reasonable time should be measured by when the work would have been done, but for the strike herein referred to. On October 12th the appellee posted a notice for its employés as follows:

"Beginning October 14th, this yard will work 9 hours a day. The men will be paid off at 5 o'clock, instead of at 12, as previous."

This discontinued the half holiday on Saturday. The men rebelled, and did not work on the afternoon of October 14th, but returned as usual on Monday morning. They were met by a timekeeper, who asked each individual if he was ready to work the nine-hour day for six days of the week, and those who said they would were allowed to work; the others were refused work. Eighty or 90 per cent. of the men did not work. A committee of the men waited upon the president of the company to discuss the matter, and he took the position that he would not change his order or submit to the eight-hour working day, which was then demanded, and abruptly announced there was nothing to discuss. This was a matter of business regulation, which, concededly, he might decide as he did; but the testimony indicates plainly that, prior to the time of the acceptance of the Richland Queen for repairs, labor troubles were brewing in the Dry Dock Company's yard, which were unknown to the owners of the Richland Queen, but which were known to the officers of the appellee. No mention of this fact, however, was made to the vessel's owners.

During the time of this cessation of work, there was no violence of any character. The month's delay in making the repairs caused a loss of about $500 a day to the owners of the vessel. Judge Rogers, in Frankfurt-Barnett Co. v. Prym Co., Ltd., 237 Fed. 21, 150 C. C. A. 223; L. R. A. 1918A, 602, quoting and accepting the language of the New York Court of Appeals in Eppens, Smith & Wiemann Co. v. Littlejohn, used this language:

"If a contract fails to fix the exact time for delivery, the law fixes it for the parties, by presuming that a reasonable time was intended. The law was so declared in the Court of Appeals of New York in Eppens, Smith & Wiemann Co. v. Littlejohn, 164 N. Y. 187 [58 N. E. 19, 52 L. R. A. 811]."

And what is a reasonable time must be determined by what the parties had in mind when the contract was made, and this must be judged by the circumstances which surrounded the parties at the time the contract was made, rather than by the circumstances and conditions which subsequently arose, and in this connection knowledge which the appellee had as to its unsettled condition of labor, or the prospect of a strike, could not be locked up in the mind of the appellee, and should have been disclosed to the owners of the vessel; for it is true that the owner of the vessel, without knowledge, could reasonably have in mind that the work would be done within a reasonable time, such as normal conditions in the yard would permit. It was within the power of the appellee to disclose such information, and, indeed, to make it one of the conditions of accepting the work. Even where labor trouble is not anticipated, such provisions are frequently put in contracts. D., L. & W. v. Bowns, 58 N. Y. 573.

Judge Grosscup, in Iron Moulders' Union v. Chalmers Co., 166 Fed. 52, 91 C. C. A. 638, 20 L. R. A. (N. S.) 315, said:

"A strike is a cessation of work by employés in an effort to get for the employés more desirable terms. A lockout is a cessation of the furnishing of work to employés, in an effort to get for the employer more desirable terms."

I think it of little importance to this case, under the proof, to determine whether this was a strike or a lockout. Certainly, there was nothing in the conduct of the employés who did not work that bordered upon or approached violence. I concede that there is no legal obligation for an employer to yield to the strikers on a matter of rate of wages and hours of labor, but here the contract was undertaken to be performed within a reasonable time, and the strike cannot be taken into consideration in determining what was a reasonable time. It was well said in School Trustees of Trenton v. Bennett, 27 N. J. Law, 514, 72 Am. Dec. 373:

"Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or rather the law leaves it where the agreement of the parties has put it; the law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by design, or neglect, inserted in their engagement."

Here it was within the power of the dock company, before issuing the orders to the men, to finish the work upon this boat and the only other boat it had in its yard for repairs. It may be that as to the other boat it was protected by a clause which relieved it of obligation in the event of a strike or lockout. The law is well settled that, where a party by his contract creates a duty or charge upon himself, he is bound to make good notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. School Trustees, etc., v. Bennett, supra.

The case of D., L. & W. v. Bowns, 58 N. Y. 573, cited by the District Judge, does not help the appellee. It contained a provision which relieved the company from responsibility in the event of strike or lockout, and is not a useful authority here.

In Smith, etc., v. Littlejohn, supra, the contract for the sale of goods to be shipped from a foreign port fixed no time for the shipment. It was held that it must be made within a reasonable time, and what that is depends upon the circumstances of the particular case, such as the parties may be supposed to have contemplated in a general way in making the contract, and the burden was fixed upon the seller to show compliance, where an action was instituted to recover damages for the buyer's refusal to accept and pay for the goods. There the court said:

"Thus the jury could find that although the plaintiff made every reasonable effort to ship the coffee promptly, and did ship it at the first opportunity it could command, nevertheless the delay in the shipment was prolonged, not because of the conditions and circumstances of the shipping facilities themselves, but because of the plaintiff's personal inability to avail itself of them. The delay was therefore unreasonable as to the defendant, because uncommonly long, and made so by the conditions peculiar to the plaintiff, and not to the transportation facilities. This personal disadvantage was not within the contemplation of the contract, and is not available to the plaintiff either to disprove unreasonable delay or to excuse it."

In Blackstone v. N. Y. & Erie R. R. Co., 20 N. Y. 46, 75 Am. Dec. 372, in a suit for damages on account of nonfulfillment of a contract of transportation by a common carrier, it was held that a railroad corporation was responsible for damages resulting from a delay to trans-

port freight in the usual way, which was caused by a great number of its servants suddenly and wrongfully refusing to work.

Nor do I consider the rule of the state courts different from that of the federal court. This subject was treated in an able opinion by Judge Sanborn in Empire Transportation Co. v. Phila. & R. Coal & Iron Co., 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623, but there the defendant was excused because there was violence and interference by illegal methods. Here such was not the case.

In Brown v. Certain Tons of Coal, 34 Fed. 914, Judge Severens, speaking for the Circuit Court of Appeals, said:

"It was therefore a part of this contract that this unloading should be done within a reasonable time. It being the duty of the consignee to unload this freight, it was his duty to provide the facilities for doing so. He was bound to promptitude and diligence. The measure of that diligence is to be estimated by the urgency of the case, by the circumstances surrounding the parties, by the loss and damage which would accrue to the owner of valuable vessels by detention during the earning season of the year; and the circumstances in this case required that the consignee should exercise promptitude and a high degree of diligence in unloading these vessels."

Hardship, expense, or loss to the party performing his contract, or anything short of impossibility of performance, will not excuse a breach of the contract. In my opinion there has been a breach here to the damage of the libelant, and it should have a decree on the cross-libel.