## BRUNSWIG GRAIN CO. v. ANCHOR GRAIN CO. et al.

### In re WALKER GRAIN CO.

(Circuit Court of Appeals, Fifth Circuit. December 26, 1925. Rehearing Denied January 19, 1926.)

No. 4672.

1. Sales &#9758;81(5)—Provision in contract for future delivery of grain held to constitute sufficient shipping instructions.

Provision in contract for future delivery of corn, "shipments within last half March," *held* to constitute shipping instructions, justifying shipment by seller, without further instructions.

2. Sales &#9758;89—Seller's agreement, on buyer's nonacceptance of corn shipment, held not a relinquishment of any rights against buyer.

Seller of corn for future delivery, which was rejected on shipment, *held* not to have lost any rights which it had by agreeing in writing, and without consideration, to unload corn and keep it in merchantable condition at buyer's expense, and to allow additional time for payment.

3. Sales &#9758;152—That seller was carrying corn at an agreed charge held not to excuse buyer from giving shipping instructions within reasonable time.

That seller of corn for future delivery pending shipping instructions was carrying it at agreed charge per month *held* not to relieve buyer from duty of giving shipping instructions within a reasonable time after request therefor.

4. Sales &#9758;152—Want of shipping instructions held to warrant cancellation of contract for sale of corn.

Seller of corn, which had been carrying it for several months, and receiving no response to requests for shipping instructions, *held* warranted in canceling contracts, without notice to buyer of intent to do so, and suing for breach thereof.

Appeal from the District Court of the United States for the Northern District of Texas; Wm. H. Atwell, Judge.

In the matter of the bankruptcy of the Walker Grain Company. From an order disallowing the claim of the Brunswig Grain Company, contested by the Anchor Grain Company and others, creditors, claimant appeals. Reversed.

Stanley Boykin and H. C. Ray, both of Fort Worth, Tex. (Capps, Cantey, Hanger & Short and Boykin & Ray, all of Fort Worth, Tex., and Orestes Mitchell, of St. Joseph, Mo., on the brief), for appellant.

W. E. Spell, of Waco, Tex., and Chas. A. Leddy, of Dallas, Tex. (W. E. Spell, of Waco, Tex., G. A. Stultz, of Kansas City, Mo., E. B. Robertson, of Fort Worth, Tex., and Merritt & Leddy, of Dallas, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from an order setting aside an order of the referee allowing a claim of the appellant against Walker Grain Company, a bankrupt. The claim was based on contracts for the future delivery of corn. Part of the corn, called for by a contract of February 15, 1918, was shipped by the appellant. The remainder of appellant's claim was for the difference between the contract price and the market price of corn contracted for, but not shipped; the contracts therefor having been canceled because of the bankrupt's defaults. The claim asserted was included among those which were passed on in the case of Walker Grain Co. v. Gregg Grain Co. (C. C. A.) 268 F. 510. It may be assumed, without being decided, that, notwithstanding the decision in that case, the claim in question is still subject to be contested by creditors of the bankrupt who were not parties to the proceeding when the same claim was formerly unsuccessfully contested.

[1] The contract of February 15 was for 10,000 bushels of corn at $2.12 per bushel, "shipments within last half March." The bankrupt's confirmation of that contract contained the following: "Bill as follows: Walker Grain Co., Fort Worth, Texas." Appellant shipped the corn during the last half of March. When the corn reached Fort Worth, the market price had declined considerably below the contract price. The bankrupt refused to pay drafts for the corn, and claimed that it should not have been shipped without shipping instructions from it. We think that the evidence adduced required the conclusion that in the grain trade the last above quoted language meant shipping instructions, and justified shipping by the seller without further instructions from the buyer. On April 10, 1918, a representative of the appellant went to Fort Worth and had an interview with the president of the bankrupt with reference to the corn

10 F.(2d)—20

shipped. That interview resulted in the signing of the following instrument:

"Fort Worth, Texas, April 10, 1918.

"This agreement, entered into by the Walker Grain Company, of Fort Worth, Texas, and the A. J. Brunswig Grain Company, of St. Joseph, Missouri.

"Party of the first part agrees to extend contract on the following cars: 310348 GTP, 106344, GT38802, MP110368, Q. 52519, CCC & STL. 61656, LSMS. 25296, AB & A. 38666 RI—until such time as he is able to supply corn to his customers, about 30 days, with the understanding that, if conditions are such as to demand it, time is to be extended 15 days longer. It is further agreed to accept cars of corn with freight, demurrage, storage, and interest included, with interest up to and including the time bill of ladings are delivered to us.

"The party of the second part is to unload said corn into the Fort Worth Elevator Company, Fort Worth, Texas, and [the word 'and' is marked out with pencil] keep same in a merchantable condition; also the party of the first part agrees to pay such expenses as necessary to keep corn in condition.

"Walker Grain Company.
"A. J. Brunswig Grain Company."

When that instrument was signed, the appellant had complied with its obligations under the contract of February 15 by shipping the corn, and the bankrupt had breached the contract by failing to accept the corn and pay for it. The terms of the instrument do not purport to evidence the substitution of another contract in the place of the one of February 15. The continued existence of that contract was recognized by the provision whereby the bankrupt "agrees to extend contract," etc. The instrument evidences the appellant's acquiescence in the bankrupt having further time to comply with its obligations. The bankrupt added nothing to its already incurred obligations by agreeing to accept the corn and to pay the freight, demurrage, storage, and interest charges. No consideration moving to the appellant supported its agreement to extend time of payment, to unload the corn into an elevator, and to keep it in a merchantable condition.

[2] The appellant's right to be paid for the corn having already become vested, that right was not impaired by its consenting, without consideration, to have the corn stored in an elevator, to keep it in merchantable condition, and to extend the time

for the payment of the agreed price. So far as the instrument purported to evidence an addition to appellant's obligations, it was unsupported by any valuable consideration moving to it and was unenforceable. Frankfurt Barnett Co. v. William Pryn Co., 237 F. 21, 28, 150 C. C. A. 223, L. R. A. 1918A, 602; 13 Corpus Juris, 598. The circumstances attending the execution of the above set out instrument make it plain that the appellant, in signing it and in having the corn unloaded into an elevator, did so for the benefit and accommodation of the bankrupt, and did not thereby lose its right to be paid for the corn shipped pursuant to the contract.

[3, 4] The contracts under which corn was not shipped provided for the buyer giving shipping instructions. Before the expiration of the specified time for shipping and thereafter the seller requested the buyer to give shipping instructions. The buyer did not comply with such requests, the last of which was made on May 1. At that time the seller had been carrying the unshipped corn at a charge of 2 cents per bushel per month, and had been doing so since April 15, but without any agreement to continue to do so for any definite time. On June 22 the seller canceled those contracts and charged the buyer with the difference between the contract price and the market price at that time. The fact that, when the seller's letter of May 1 was written, it was carrying the unshipped corn for an agreed charge, did not relieve the buyer of the duty of complying, within a reasonable time, with the seller's requests for shipping instructions.

In behalf of the buyer it was claimed that the seller was not entitled to cancel the contract on June 22, without notifying the buyer of its intention to do so. At that time the buyer had long been in default, both as to the corn which had been shipped and as to that which had not been shipped, had failed to pay for corn shipped to it by other sellers, and its license had been canceled by the Food Administration. It well may be inferred from the evidence that if, prior to June 22, the seller had given formal notice to the buyer of an intention to cancel, the buyer would have continued to fail to take and pay for the corn at the contract price, which was greatly more than the market price at that time. The buyer's long-continued failure to comply with its contract obligations after repeated demands to do so amounted to such a repudiation of its obligations as entitled the seller to treat the contracts as at an end and to sue for the breach of them. Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 7 S. Ct. 875, 30 L. Ed. 967; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953. We do not think that the record now before us discloses any good reason for reaching a conclusion different from that reached in the case of Walker Grain Co. v. Gregg Grain Co. (C. C. A.) 268 F. 510, in which it was decided that the cancellations now in question were proper.

We think that the court erred in disallowing appellant's claim. Its order to that effect is reversed.